# A. H. WILDER,

## v.

# THE CITY OF SAINT PAUL.

The principal question in this case is whether a certain strip of land in St Paul, has been dedicated to public use as a street. A statutory dedication is not pretended. In 1848, R purchased from the U. S. the legal sub-division of which the strip of land in question is a part; and in June, 1849, the government issued to him a patent therefor. In January, 1849, R sold a portion of his tract embracing the premises in question, to J, who kept a public house on the premises by him purchased. In passing to and from said house, the strip of land was necessarily used as a street or way. It was also so used by those passing from one part of the town to another, and from one street to another. It was for a time in point of travel and business, a principal street of the town; and its use as a street having commenced before the land was purchased from the government continued until after business was diverted from it, and the grading of other streets made travel on it inconvenient, and it is claimed that there is some travel on it yet. In January, 1849, J sold part of his said tract adjoining this street to C and in the deed described the premises sold as bounded on one side by and "fronting on" this strip, which he designated "St. Charles street," by which name it has since been designated. Subsequently he sold other portions of his said tract to S, including his entire interest, except this parcel. Of that sold S part lay east of, and contiguous to, the tract in question, and part west of, and contiguous to it; and in the deed to S, J described such part as bounded on one side by "St. Charles street." In 1854, the Territorial Legislature granted to St. Paul a city charter, by which it was provided that the city council should appoint three commissioners, who, with the city surveyor, should cause a new and accurate survey to be made of the lines and boundaries of all the streets, alleys, public grounds and blocks; and cause an accurate plat thereof to be made and certified to by said commissioners and surveyor, to be filed in the office of the city surveyor, and recorded in the office of the register of deeds, and which survey it was declared should be *prima facie* evidence of the lines and

boundaries of all streets, alleys, public grounds and blocks, &c. In pursuance of this provision, the city council caused to be prepared a map of the city, designated the "Folsom Map." This map does not designate the premises in question a street. In February, 1849, the owners of lots in the town of St. Paul, among whom was J, caused a map of the town to be made, on which the premises in question were not designated a street; this map is designated as the "Map of St. Paul." In 1850, or later, another map of the town was published, as a mere private enterprise, designated the "Conway & Nichols' Map," on which "St. Charles street" was laid down. J at different times declared that he did not intend to dedicate to public use, this strip of land. The plaintiff has acquired the interest of J in St. Charles street, and claims it as his private property. The defendant claims that it is a public street, duly dedicated to public use. For the purpose of determining this adverse claim, plaintiff brings this action under *Chap. 75 General Statutes. Held :* that a person in actual possession may maintain this action, though he has not a valid legal title, and on proof of such possession by plaintiff, the burden is on defendant to establish his adverse claim; that the title or rights of third parties with which the defendant does not connect himself cannot properly be litigated in such action. That proof that the plaintiff has not a good title would not defeat his right of recovery against a person making an unfounded adverse claim, and though an issue is made on the validity of the plaintiff's title, it is not the duty of the court to try it.

It is a general rule that to constitute a valid common law dedication, there must be an intention to dedicate, and an act of dedication on the part of the land owner, and an acceptance on the part of the public. This general rule is subject to the modification ; that if the owner of the servient estate intentionally, or by gross negligence leads the public to believe that he has dedicated the premises to public use, he will be estopped from denying the dedication *to the prejudice of those whom he may have misled.*

In order to raise an admission or statement by one party from the rank of evidence to the dignity of an estoppel, it must not only be shown that its retraction would be injurious to the other, but that the injury results from a course of action induced by the admission. The language of recital or description in the deeds made by J to C and S, does not raise an estoppel in favor of the defendant or the public, it not having been admitted or found as a fact either that J intended to dedicate, or that the public accepted the dedication or acted on the faith of it, or could be prejudiced by its revocation. After the entry and prior to the issuance of the patent for the land in question, the purchaser had the equitable title, the U. S. having the mere naked fee, and if, under such circumstances the purchaser dedicated the land to public

use, the dedication as against him and his successors in interest is as valid, binding and irrevocable, as if at the time of the dedication he had had a perfect legal title.

The declarations of J, oral or written during the use of the premises by the public, are evidence on the question of his intention to dedicate.

Before the testimony given by a witness on a former trial can be received in evidence, the party offering it must show that he could not with due and proper diligence have secured the attendance of the witness.

The Conway & Nichols' map not having been assented to or sanctioned by the plaintiff, or his grantors, is not evidence against him.

An abandonment of a public easement will not be presumed from a lapse of time, less than that which would raise the presumption of a grant.

The City Council of St. Paul had not the power to vacate St. Charles street, either by taxing it or omitting it from the "Folsom map,"—said map is only *prima facie* evidence.

If the evidence showed that it was necessary or convenient for J to leave "St. Charles street" open as a way to his house or place of business, it was for the jury to say whether his permission of its use by the public, under such circumstances, tended to show an intention on his part to grant a perpetual easement to the public.

A certificate of redemption showing that W had redeemed said strip of land from the sale thereof for the taxes of 1862 and 1863, was not admissible in evidence for the purpose of proving plaintiff's possession.

The listing for taxation and sale for taxes of St. Charles street by the County Commissioners and City Council, were competent evidence to be submitted to the jury by the plaintiff on the question of acceptance of the dedication by the public. The declarations of a third party are not evidence when they are not in the nature of verbal acts, or do not characterize acts that would be competent evidence. *Chap.* 23, *laws* 1866, makes the record of a deed which was recorded prior to 1866 evidence, though the deed was not properly admitted to record.

The Folsom survey and map being *prima facie* evidence, the presumption is that if Folsom in making said survey and map removed stakes and changed the contour of lots, a prior survey and not his, was erroneous.

The common law does not require an acceptance of a dedication to be proven by acts done or authorized by public officers. The acts of a single individual done on the faith of a public dedication, and not in pursuance of the express or implied covenants of any agreement with the owner of the servient estate, though ordinarily very unsatisfactory evidence, may at least tend to show an acceptance of such dedication, and therefore may go to the jury as evidence.

Wilder v. The City of St. Paul.

This action was brought in the District Court for Ramsey County, under chapter 75 of the General Statutes, to determine the adverse claim of the defendant to a certain strip of land in the city of Saint Paul, known as "Saint Charles street," of which the plaintiff alleged he was the owner and in possession. The defendant denied the title and possession of the plaintiff, and alleged that the premises in dispute were a public street of the city, which allegation was denied by the reply. The case was tried before a jury, who found a verdict for the plaintiff; the defendant moved the court for a new trial; this motion was denied by the court, and the defendant appeals from the order denying the same to this court. The material points raised in the case are fully presented in the opinion of the court.

H. J. Horn and I. V. D. Heard, for Appellant.

Brisbin & Warner and James Gilfillan, for Respondent.

*By the Court*—Wilson, Ch. J. The land upon which the city of St. Paul is built was settled upon and occupied as the site of the town of St. Paul, before it was purchased from the government of the U. S. In 1848, Louis Roberts purchased from the government the legal sub-division of which the strip of land in question—"St. Charles street,"—is a part, and in June, 1849, the government issued to him a patent therefor. In January, 1849, Roberts sold a portion of his tract embracing the premises in question to H. Jackson, under whom the plaintiff claims title. Prior to this Roberts had deeded to Daniel Hopkins, a lot fifty by one hundred feet, which it is claimed by the defendants' counsel, embraced part of the premises in question; but whether this Hopkins' tract did in fact embrace any part of the premises claimed by the

plaintiff, we do not now discuss, for reasons which we will hereafter state. Jackson kept a public house on the premises purchased from Roberts, and in passing to and from said house, "St. Charles street" was necessarily used as a street or way. It was also used by those passing from one part of the town to another, and from one street to another. It was for a time in point of travel and business, a principal street of the town, and its use as a street having commenced before the land was purchased from the government, continued until after business was diverted from it, and the grading of other streets made travel on it inconvenient. It is claimed that there is still some travel on it.

On January 19th, 1849, Jackson sold part of his tract adjoining this strip to Charles Cavalier, and in the deed described the premises sold as bounded on one side by, and "*fronting on*" this strip, which he designated "*St. Charles street.*" (This strip has since been known as "*St. Charles street.*") Subsequently he sold other portions of his said tract, including his entire interest except this parcel, to Franklin Steele. Of the land sold Steele, a part lay east of and contiguous to this strip, and a part west of and contiguous to it, and in Steele's deed, Jackson described each part of the premises conveyed as bounded on one side by " St. Charles street." In 1854, the Territorial Legislature granted to St. Paul a city charter, in which is the following provision :

" The Common Council shall, at the first meeting appoint three commissioners, one from each ward who, with the city surveyor or such other assistant surveyor as the common council may appoint, shall cause a new and accurate survey to be made of the lines and boundaries of all the streets, alleys, sidewalks, public grounds, wharves or landings, and blocks, and cause to be established such permanent landmarks as they may deem necessary, and to cause an accurate plat or

plats thereof to be made and certified to by said surveyor and commissioners, which shall be filed in the office of the city surveyor, and a copy thereof shall be recorded in the office of the Register of Deeds. The survey and landmarks so made and established shall be *prima facie* evidence of the lines and boundaries of all streets, alleys, sidewalks, public grounds, wharves or landings and blocks in all cases in which they shall be drawn in controversy in all courts of this Territory."

In pursuance of this provision of the city charter, the city caused to be prepared, in 1854, a map of the city which is hereafter designated the " Folsom Map." This map does not designate the premises in question a street. The owners of lots in the town of St. Paul, among whom was H. Jackson, caused a map of the town to be made, which they signed February 28th, 1849. On this map " St. Charles street " was not laid down, nor were the premises in question designated as a street. This map is hereafter referred to as the " map of St. Paul." There were also published as a mere private enterprise, in 1850, 1851 or 1852, a map of St. Paul, called " The Conway and Nichols Map," on which " St. Charles street" was laid down. The evidence, we think, clearly shows that this map was not published prior to 1851; certainly not before late in the autumn of 1850. The evidence shows that Jackson, at different times declared that he did not intend to dedicate to public use the land in question. This plaintiff having acquired Jackson's interest to said strip of land, claims it as his private property. The defendant alleges that it is a public street duly dedicated to the use of the public. For the purpose of determining this adverse claim, the plaintiff brings this action under *Chap. 75 of the General Statutes*. Sections one and two of said chapter read as follows:

" An action may be brought by any person in possession by himself or his tenant of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate or interest. *Section* 2. If the defendant in such action disclaims in his answer any interest or estate in the property, or suffers judgment to be taken against him without answer, the plaintiff cannot recover costs."

Possession of the plaintiff (by himself or tenant) and an adverse claim by the defendant are the only facts which the statute requires to constitute a cause of action. This action is not brought to determine the plaintiff's title but the defendant's claim. This is the language of our statute, and seems clearly to us to be its meaning, and it has been so held by this court in *State vs. Fisk*, 2 *Minn.*, 153.

The plaintiff must, in order to recover, prove his possession. The burden is then on the defendant to prove his adverse claim. In such an action the title or right of a third party could not properly be litigated, and if it could, the fact that such third party had a well founded claim or title would be no justification of a defendant for making an unfounded or false claim. If a defendant's claim is unjust it should not be supported, whatever may be the rights of the plaintiff as against third parties. Possession is *prima facie* evidence of title, and in all cases may ripen into title, and every false or unfounded adverse claim is a trespass on the rights of the person in possession, which no third party has a right, either morally or legally to commit. Whether possession is legal is a question that concerns only him in possession and the legal owner or person legally entitled to the possession, and neither the law nor public policy will allow those who have no interest in the question to call on him who is *prima facie* owner for proof of the validity of his claim. It is a well settled

rule of law that possession, whether founded on good title or not, will support trespass *quare clausum fregit* against a stranger or wrong doer. *2 Sel. N. P. (7th Am. ed.) and cases cited*, 1324; *North vs. Coates, 2 Bibl. 591; Miller vs. Humphries, 2 Marshall*, 448. This is upon the principle that possession is *prima facie* evidence of ownership, and that strangers and wrong doers have no right to inquire into the legality of the possessor's title, or to call on him to establish or defend it. The same principle applies to, and governs this case. But it is claimed that the question as to the plaintiff's title was material as characterizing his possession, and also because it was in issue by the pleadings. That the plaintiff went into possession claiming title, is not questioned; there is not a word of evidence to create the least doubt on this point. The court below charged the jury, "That the statute under which this action was brought, was intended to enable parties in possession to quiet their title, and that the plaintiff must show an actual possession. That a mere formal entry for the purpose of bringing suit was not sufficient." The jury having found for the plaintiff under this charge must have found that he was in *actual possession*. An actual, peaceable possession with claim of title, was sufficient to enable the plaintiff to maintain this action, and whether the evidence would show that he had good title or no title, it could not characterize his possession as insufficient to give him a status in court, or to authorize him to recover against a person making an unfounded claim. It is true that the plaintiff's title in fee is alleged in the complaint and denied in the answer. But the parties cannot, by making immaterial issues, make it necessary or proper to try them. . *Corning vs. Corning, 2 Selden* 97. The allegation of title may be stricken from the complaint, and there is still sufficient left, and when the immaterial matter can be thus separated it may be treated

as surplusage.   Whether therefore the plaintiff " had shown a valid title apart from the question of dedication" as charged by the court, is immaterial; but as an issue was made on this question, it is perhaps possible that said charge might have misled the jury, as we think if plaintiff's title had been a question properly in the case, it should have been submitted to the jury.   It cannot be said that there was not evidence before the jury from which they might have found that the plaintiff was in actual possession when the suit was commenced.   The plaintiff having shown himself in possession, the burden of proof was on the defendant to establish its adverse claim, (that the premises in question had been dedicated to the public use as a street.)   A statutory dedication is not pretended.   To constitute a valid common law dedication, there must be an intention to dedicate, and an act of dedication on the part of the land owner, and an acceptance on the part of the public.   *Green vs. Chelsea*, 24 *Pick.* 80; *Irwin vs. Dixon*, 9 *How. U. S. Rep.*, 30 *and* 31; *Barraclough vs. Johnson*, 8 *Ad. and E l.*, 101—5; *Poole vs. Haskinson*, 10 *Mees. and Wells*, 829; *Baker vs. City of St. Paul*, 8 *Minn.*, 494; *Hall vs. McLeod*, 2 *Met. (Ky.,) R.*, 104; *City of Oswego vs. Oswego Canal Co.*, 2 *Seld.*, 257; *Carpenter vs. Grignon*, 35 *Barb.*, 395; *Wash. on Easements*, *chap.* 1, *Sec.* 5; 2 *Smith, Lead cases*, (6th *ed.*,) 225-6-7; *Gowan vs. Phil. Ex. Co*; 5 *Watts and S.* 141.   This general rule should perhaps be stated with the qualification that if the owner of the servient estate intentionally or *by gross negligence*, leads the public to believe that he has dedicated the premises to public use he will be estopped from contradicting his representations *to the prejudice of those whom he may have misled.*   Indeed the rule as to dedication at common law, is but an application of the doctrine of *estoppel in pais.*   A dedication to public use does not operate as a

grant, but as an *estoppel in pais* of the owner of the servient estate from asserting a right of possession inconsistent with the uses and purposes for which the dedication was made. 2 *Smith, Lead. cases,* 226–8, *and cases there cited ;* 2 *Green. evidence,* sec. 662 *and cases there cited ; Child vs. Chappel,* 5 *Seld.,* 256 ; *City of Cincinnati vs. White's Lessees,* 6 *Pet.* 438–9 ; *Hunter vs. Trustees of Sandy Hill,* 6 *Hill Rep.,* 412. A person who intentionally, or by culpable negligence induces another to act on his representations, will be estopped from denying their truth to the prejudice of those whose conduct he thus influenced. Under such circumstances, representations made by words, acts or silence, when duty requires the party to speak, are conclusively presumed to be true as against him and in favor of the person whom he has misled. In other words, his acts or admissions operate against him in the nature of an estoppel, when in good conscience and in honest dealing, and in justice to others he ought not to be permitted to gainsay them. But the doctrine of estoppel in fact is called into life for the purpose of preventing wrong and redressing injury, and is never carried farther than is necessary to prevent one party from being injured by his reliance on the acts or declarations of another, and therefore no declarations or acts give rise to an estoppel unless they have been relied and acted on, and unless their denial would prejudice the party in whose favor the estoppel is introduced. A declaration to A, not communicated to or acted on by B, will not raise an estoppel in favor of the latter. It may be further stated as a corollary to the propositions above laid down, that a declaration or act retracted before it is acted on does not raise an estoppel, and that an estoppel may exist for one purpose and not for another and in favor of one person and not in favor of another, though growing out of the same transaction. *See Combs vs. Cooper,* 5 *Minn.,* 254; 2

*Smith's Lead: Cases* (6th *Ed.*) 702 *to* 6; *Ib.* 743 *to* 749 *and cases there cited;* 2 *Parsons on Contracts,* (5th *Ed.*) 792 *et seq and cases cited in notes.* We have thus stated, without discussing the principles on which estoppels are enforced, because it will be necessary to apply these principles in the farther discussion of this case, and they are so well settled that a mere reference to the authorities is only necessary.

It is insisted that the deeds to Cavalier and Steele describing the portion of Jackson's lot deeded to them as "fronting on" and "bounded by" "St. Charles Street," estop this plaintiff from denying that "St. Charles Street" was dedicated to public use. This position we think is not tenable. In order as we have seen to raise a statement or admission by one party from the rank of evidence to the dignity of an estoppel, it must not only be shown that its retraction will be injurious to the other, *but that the injury results from a course of action induced by the admission.* Where a dedication is accepted by the public, the presumption is that it cannot be revoked without prejudice to rights that may have been vested on the faith of the dedication, and the owner of the servient estate will not be permitted to revoke the dedication under such circumstances; but until there is an acceptance on the part of the public "the dedicator may revoke his act; it remains a mere voluntary proposition." *Baker et al. vs. City of St. Paul,* 8 *Minn.* 494. But it not having been admitted or found as a fact by the jury, either that Jackson intended to dedicate, or that the public accepted the dedication or acted on the faith of it, or that rights vested on the faith of such dedication would be prejudiced by its revocation or denial, there is no ground whatever for holding as a legal proposition that the language of description or recitals in said deeds estopped this plaintiff from showing, as *against this defendant,* that Jackson did not dedicate these premises to public use.

Whether said deeds would operate by way of estoppel in an action between the grantees, who may have relied and acted on the faith of the recitals, and who might be injured by their denial, and Jackson or his privies, is not a question in this case, nor if it was answered in the affirmative would it follow as a consequence that they would operate as an estoppel in favor of the defendant. By said deeds the rights of the parties thereto become fixed, but the public acquired no rights until it in some way becomes a party to or interested in the transaction, or at least until third parties acquired rights on the faith of the dedication, and while the transaction remained a mere private one, it was competent for the owners of the servient estate to free their property from the servitude by an arrangement with the owners of the dominant estate. *Rowans Ex. vs. Town of Portland,* 8 *B. Monroe* 236–7; *Child vs. Chappell,* 5 *Seld.* 258; *Wash. on Easements, page* 147, *Sec.* 30. The question at issue in this case is whether the public have acquired an interest in the property, and the affirmative of this issue could not be proven by showing that Steele, Cavalier and Hopkins or their grantees or representatives have private rights therein. The case of *Wyman vs. Mayor &c. of N. Y.* (11 *Wend.* 487,) to which we are referred is not in conflict with the view above expressed. That case decided that the conveyance of lots according to a map or plan implies a covenant to the purchasers that the streets or other public places indicated on such plan shall be forever open to the use of the public, free from all claims or interference of the proprietors inconsistent with such use, and that this principle is not limited in its application to the single streets on which such lots may be situated, and therefore that a release of the easement by the owners of lots fronting on any particular street does not discharge the land over which the street is laid from the servitude, but that the owners of other lots purchased from

the same proprietor have also an interest or easement in the street, though the lots do not front upon it. This is clearly the law. The purchaser of a lot according to such plan acquires a right to every advantage, privilege and easement which the plan represents. His lot is made valuable by other streets as well as the one on which it fronts. By the sale of a lot according to such plan there is an implied warranty that the purchaser shall enjoy all the privileges and benefits which it is calculated to secure and by no private arrangement can he be deprived of this. The case of *Woodger vs. Hadden,* (5 *Taunton* 125,) is not an authority for the position taken by the defendant's counsel. The Court in this case charged the jury as follows: "No person can dedicate land as a street while the title is in the U. S., and in this case to constitute a lawful dedication the proofs must show that after the issue of the patent the patentee or his assigns intended to make such dedication." To this charge the defendant excepted.

We think the charge in this respect was erroneous. The land in question was purchased from the government of the U. S. in the fall of 1848, and a patent was issued therefor in June, 1849. Jackson, prior to the issuance of the patent, had the equitable title, the U. S. having the mere naked fee. It was under these circumstances, Jackson's land, as against every person else. He had a right to convey or dispose of it in any way, and if he dedicated it to the public there is no reason why he should not be estopped from revoking such dedication to the prejudice of any individual, or of the public. A party is as much estopped from acting fraudulently or unjustly with reference to property to which he has not strictly and technically a legal title, as with reference to property to which his title is perfect.

The doctrine of estoppel applies with equal force and on the

same principle to both classes of cases. The defendant's counsel argue that it was error in the court below to receive evidence as to what Jackson had said about the dedication of the street. If it were admitted that the reference to said street in the deeds to Cavalier and Steele, was *ipso facto*, a dedication to public use, it would of course follow that no declaration prior or subsequent to that time could affect the question. But this cannot be admitted. These deeds were merely evidence of a dedication, as was the permission to the public to use the premises as a street. His declarations, made during the use of the premises by the public, were also evidence to show his intention as to a dedication, and to characterize his alleged acts of dedication.

*Proctor vs. Town of Lewiston*, 25 *Ill.*, 153. In this case the Supreme Court of Illinois lays down the law on this subject as follows: "It was the right of the defendant to have his declarations, as well as his acts, go to the jury as evidence of his intention. Nor should he be confined to acts and declarations made at the time when he placed the fence on the line of the alleged road, but his subsequent acts and declarations should all go to the jury. The more remote from the time the alleged dedication was made, the less weight no doubt would they be entitled to as tending to rebut the intention of the dedication, but it would be for the jury to determine whether such declarations were the result of a change of purpose and a design to resume a dedication which he' at the time intended in ·fact to make to the public, or whether they were consistent with the original purpose." See also on this point, 2 *Smith's lead. cases*, 225–6, *and cases there cited.* For the same reason the plat of the town of St. Paul, (Bronson's map) was properly admitted in evidence; whether legally executed as a plat in accordance with our statute, is· immaterial. It was at least a declaration by

Jackson and the other proprietors as to the plan of the town, and the neglect or refusal of Jackson to indicate on the map that the premises in question were intended as a public street, is evidence to go to the jury of his intention not to dedicate. The defendant offered to prove the testimony given by John P. Owens, upon a former trial, offering to show as preliminary to such proof "that said Owens was not in the State of Minnesota, but had departed therefrom during the trial, without the knowledge of the defendant." There is a great diversity of opinion as to what state of things will authorize the reception of such secondary evidence, but perhaps this is not a proper case in which to discuss that question, for it is very clear as a matter of principle, that it should not be received until the party offering it has shown that he could not, with due and proper diligence, have secured the attendance of the witness in person. This the defendant did not offer to show in this case. We think there was no error in the ruling of the court excluding the "Conway & Nichols" map. This map was a private enterprise, with which neither the town proprietors nor the city officers had any connection. It was issued in 1850, 1851 or 1852, and had marked on it "St. Charles street." If Jackson sold property with reference to this map, or in any way assented to its correctness, of course it would be evidence against him, but on no other ground. That he saw it, is to be presumed and may be admitted; but a map made by a private individual cannot tend to show what Jackson's intention was as to the dedication of said street. The most it could show on this point would be the understanding of the person who made and issued the map. It was not in Jackson's power to suppress, nor was it his duty to protest against a map which he might know to be erroneous. That the public for a time used this map, has no tendency to prove that they accepted the dedi-

Wilder v. The City of St. Paul.

cation of St. Charles street. The public had no more control over the map than Jackson had, and even if it were shown that they assented to its correctness, this would only be a *declaration* that they accepted the dedication, and not an act of acceptance; and it may admit of doubt whether they could prove acceptance by their mere declaration.

Franklin Steele testified that he bought property of Jackson in January, 1849, and took another deed in 1850. That Jackson at the time of the transfer had a map. "I think (he says) at that time there was a plat of the city, and also a smaller one of the block itself, (31). * * * I think I objected to the small diagram as not being accurate; he said it was not necessary to put that on record (plat of 31). He said something about recording a plat of the town; that the map of the city was imperfect and not completed. * * * St. Charles Street was on the plat of 31, he showed me; don't recollect of its being on the general map. * * * There was a large map, I recollect, examined when I purchased the property; I think it belonged to Conway & Nichols. He had the map and showed it to me after we went over the ground; I saw it afterwards in Judge Lambert's office. As to the small map, when I objected, he stated that a correct map had been or would be placed on file."

B. F. Lott says as to the map: "I had my office in Jackson's house, in fall of 1849; I moved my office to Third street afterwards, but boarded with him. I had a map (the Nichols' map,) in my office on Third street."

C. P. V. Lull says: "It was got up about 1850."

H. F. Masterson says: "My best recollection is that the map was issued late in 1850, or spring of 1851."

Joel Whitney says: "He was interested with Nichols in publishing it. I think it was published in 1852. I arrived in September, 1850."

Lafayette Emmett says: "I came here in May, 1851. I cannot say when it was published, but it was after I came here."

This evidence was all before the court when the map was offered. The only ground on which the map could be evidence, is that Jackson had affirmatively assented to its correctness, and the only evidence of such assent is that he made the sale to Steele with reference to it. This sale was made to Steele in January, 1849, and the evidence most clearly shows that the map had not been issued at that time. The court therefore, was correct in refusing to receive the map as evidence.

As to the question of abandonment we do not deem it necessary to examine at length the charge of the Court. We are unable to find in this case the least evidence of an abandonment of the easement except as it may be inferred from the non user of the right. Whether non user for any length of time would bar the right of the public to an easement once clearly obtained is a question perhaps not free from doubt, but there perhaps can be no doubt on general principles but that an abandonment will not be presumed from non user for a lapse of time less than that which would raise the presumption of a grant. *See* 2 *Smith's Leading Cases*, 227; *Wash. on Easement*, sec. 6, chap. 5; *Corning vs. Gould*, 16 *Wend.*, 534-5; 2 *Wash. on Real Prop.*, (2d Ed.,) sec. 3, page 23, et seq.

The non-user in this case, if indeed there was a non-user for any given time, was for a period much less than twenty years, and it was not of such a character as to show any intention of abandoning the easement, (if an easement ever existed.) General travel on this street necessarily ceased on account of the grading down of Third and Bench streets, making it nearly inaccessible. There was no claim or holding adverse to the public, except by the plaintiff and his grantors, which was never acquiesced in. Under such circumstances,

the non-user can not be considered evidence of abandonment.

As to the taxation of "St. Charles street," and the making of the Folsom map, without showing it, it is sufficient to say that the city could not, either by such taxation or omission from the map, vacate a street, and we have no right to presume that they intended to attempt what they had no power to do. The Folsom map was clearly *prima facie* evidence. It was made in pursuance of an act of the Legislature, and under the supervision of the City Council, and the presumption is that it in accordance with the act under which it was made showed all the streets. But it was only *prima facie* evidence of this. The Legislature manifestly never intended to permit the City Council to vacate streets by merely omitting them from the map. The map on general principles would only be *prima facie* evidence, and the act in pursuance of which it was made makes it nothing more. In passing on the question of dedication an important question for the jury must be whether the evidence taken together shows that Jackson intended such dedication, and the fact that he left open the strip of land in question to the public as a street would doubtless be considered evidence of such intention. But if the evidence also showed that it was necessary or convenient for Jackson to have this open as a way to his house and place of business, it would be for the jury to say whether his permission of its use by the public under such circumstances was any evidence of an intention to grant a perpetual easement. This we think was a question of fact for the jury and not a presumption of law. The plaintiff *for the purpose of showing his possession*, offered in evidence a certificate of redemption dated May, 1865, showing that W. P. Warner had redeemed said strip of land from the sale thereof in Ramsey County for taxes of 1862 and 1863. The defendant having objected to it this evidence should not have been received

as it did not tend to prove plaintiff's possession. The listing for taxation and sale for tax of "St. Charles Street," by the County Commissioners and City Council, were properly submitted to the jury on the question of recognition or acceptance of the dedication. What weight should be given to such evidence it was for them to decide when viewed in connection with any explanatory or modifying circumstances. Such act being inconsistent with a dedication was an implied admission by the City Council that there had been no such dedication. The defendant asked the witness Cavalier the following question: "Did you ever hear any declaration made by your father-in-law, Mr. Hopkins, as to this street, between January 22d, 1849, and January 21st, 1850, while Hopkins was in possession?" The plaintiff objected to the answer and the Court sustained the objection.

We have no means of ascertaining from the question what answer it was intended to call forth. Mr. Hopkins' declarations as to the street, would ordinarily not be evidence; but if the defendant's counsel, as they intimate, wished to prove that Hopkins, while owner of a part of "St. Charles street," dedicated the same to public use as a street or under such circumstances assented to the dedication of the street by Jackson, his declaration as to such dedication or assent, would be competent evidence. But we infer that they wished to show his declaration *generally* "as to the street," and such declaration would not be evidence. It seems very clear that the case turns on the question of Jackson's dedication, as the plaintiffs do not pretend that any failure or refusal of Hopkins to assent to or acquiesce in such dedication rendered it imperfect or inoperative. But as it is possible that the declaration of Hopkins might be evidence, the answer to the *general* question propounded should have been heard, the court limiting the defendant to the proof of such declarations only as would be competent evidence. Whether the certifi-

cate of the acknowledgment of the deed from Roberts to Randall was sufficient or not, it would seem that the record was properly admitted in evidence. *See Laws* 1866, *chapter* 23. The testimony of Mr. Masterson had no tendency to show that Folsom made either his map or survey inaccurately. If he removed stakes or changed the contour of lots, the presumption is that a prior survey, and not his, was erroneous. The defendant offered to show that " H. H. Sibley, in erecting a building on the corner of Third street and the premises in dispute, had made a smooth front to said building at the side bordering said premises, and had placed in the cellar thereof, seven or eight places for windows or doors, with sills, &c., one of which sills appears above the line of said street." This evidence was objected to as immaterial, and the objection was sustained.

We think that this was competent evidence of the question of acceptance of the dedication by the public. If there was a dedication of these premises, it is to be presumed that the fact was known to the citizens of the town or city of St. Paul, and the act of each individual done on the faith of such dedication, (and not in pursuance of the express or implied covenants of any agreement with the owners of the servient estate,) are evidence tending to show an acceptance by the public. The common law does not require an acceptance to be proven by acts done or authorized by public officers ; and though the acts of a single individual would ordinarily be very unsatisfactory evidence of a public dedication, its weight is to be determined by the jury. The last error alleged in the case is that the evidence does not justify the verdict. It is not for us to determine on which side is the preponderance of evidence. That is for the jury. But manifestly there was not such a lack of evidence as to justify the court in setting aside the verdict on that account. The judgment is set aside and a new trial ordered.