## The Village of Mankato

### vs.

### John F. Meagher.

The town site of Mankato was entered under the act of Congress, upon proof of the survey, settlement and occupancy by an association claiming to own it. Such proof having been adjudged sufficient by the United States, and the entry allowed, although such survey, settlement and occupancy, was prior to the United States survey, or the extinguishment of the Indian title; and the decision of the United States being conclusive on this court in any case in which a party claims land under the said act, [following Leech vs. Rauch, 3 Minn. 448] so that this court could not avoid the title of one who claimed lots in Mankato by virtue of such settlement and occupancy, because it was prior to the treaty or survey, or because of any objection to the competency of a company to take a town site, under the town site law, it is equally conclusive in a case in which the title of the public to an easement derived from such claimant is drawn in question.

Proof, that said company settled the land for a town; surveyed and platted it; improved and occupied portions of it, and caused it to be entered as a town, on proof, and payment made by the company, would be evidence tending to show a settlement and occupation thereof by it, in such a manner as that the land was not subject to pre-emption; in which case the company would be entitled to have a trust established and declared in its favor, [following Leech vs. Rauch, 3 Minn. 448; Castner vs. Gunthur, 6 Minn. 119; Weisberger vs. Tenney, 8 Minn. 456.]

Said company, to the extent of whatever interest it acquired, by such settlement and occupancy, in any portion of said town site, and whether its rights were vested or inchoate, might make a valid common law dedication: that is, it might estop itself from afterwards questioning its authority to devote any interest or site to public use, at the time of such dedication, [following Mankato vs. Willard, 13 Minn. 13.]

The Village of Mankato v. Meagher.

Proof of acts of said company prior to the entry of the said town site, indicating its intention to dedicate any part of said town site to public use, is therefore, competent evidence to go to the jury upon the question of such dedication. As such acts, plats of said town site made by said company, who certified thereon that it gave the streets, alleys and public grounds, as therein described, for public use, by which plats, as a general rule, the town is built and occupied, and upon which an open space is delineated, including the premises in question, and marked " Levee," are competent evidence to go to the jury upon the question of such a dedication of such open space, although they did not conform to the requirements of the statute. respecting the execution, certifying, acknowledging and recording of town plats.

A transcript by the register of deeds of Blue Earth county, from the records of Ramsey county, of such a plat, recorded there while such territory was attached to Ramsey county for judicial purposes, is admissible in evidence, with the same effect as the original record would have been.

A plat of said town, made after the United States survey, and before entry, by order of and signed by a certain other association, claiming to be proprietors of the town site, upon which the said signers certified that " they dedicated to public use all public squares, streets and alleys thereon," and upon which said open space is designated " public landing." is competent evidence to go to the jury upon the question of such a dedication. though not conforming to the statute in the particulars above specified, as evidence of the intention of the signers, especially, in view of the proof introduced by defendant, that each signer was living in Mankato at the time, and improving portions of the town site.

Tax receipts, for taxes paid upon the premises for 1861, 1862, 1863 and 1864, and prior to the incorporation of the village, for state, county, town and road taxes, were properly excluded. as having no tendency to disprove an acceptance by the public of the dedication claimed, defendant and those under whom he claimed having been in the occupation and use of the premises taxed, claiming to own the same, and the same being, therefore, liable to taxation, under Stat. 1860 ch. 3. Sub. 8, whether part or parcel of a public landing or not.

Evidence that the village trustees caused a sewer to be laid out of a straight course so as to escape, and not interfere with said premises, was also properly excluded, as not tending to disprove such acceptance.

Inasmuch. as on the entry of said town site, the district judge became seized thereof in trust for the occupants, on the 21st March, 1856, their heirs or assigns, according to their respective interests as they then existed, (following 3 Minn. 448; 6 Minn. 119; 15 Minn. 119,) and inasmuch as, if the occu-

The Village of Mankato v. Meagher.

pancy of P.& S. under whom defendant claimed, and who had received from said judge a deed of the property in question, or of their grantors, did not commence until after that date, said deed would have been in contravention of said trust, it was not error in the court to instruct the jury, "that to ascertain the defendant's title, you will have to examine his occupancy, and the occupancy of those through whom he claims title, to see if they have done acts necessary to constitute an occupancy, to give him a title;" and to refuse to instruct them, "that if they find that said deed purports to convey the title in fee, and defendant has conveyance in fee from or through them, for said premises, that defendant is in this action to be considered as the owner in fee thereof."

It was not error to refuse to instruct the jury "that the surveying, platting, and recording towns, pre-supposes ownership in such persons, and that the title must be in them perfected; and to constitute a statutory dedication, all the requirements of the statute in surveying, platting and recording town sites must be complied with;" a fair construction of the instruction being that the equitable owner of land, could in no way affect the title to it, by surveying, platting, and recording a town thereon; though the second ground taken by itself lays down a correct rule of law.

In an action brought by the village of Mankato, to recover a penalty under its ordinance for neglecting, after notice, to remove a building from land claimed to be a public landing by virtue of a common law dedication thereof, and the defendant claimed to be the owner of said building, and the land covered thereby, and occupied therewith, being part of said alleged public landing, and was in possession, an instruction that statements by parties in possession, as to the manner and character of their claims or possession, is only material in an action where the title is in controversy, which is the case in this action, is not erroneous.

The plaintiff claims that a building, owned and occupied by defendant, stands on ground which has been dedicated to public use, as a public landing or levee, and brought this suit in the district court for Blue Earth county, to recover a penalty imposed by an ordinance of the village of Mankato, for neglecting to remove buildings from public grounds, after notice. The defendant claims to own the land on which the building stands, deriving his title through intermediate parties from Parnell & Stoltz, who received a deed therefor from the trustee under the town site act. If any fuller statement of the case

is necessary, than is presented in the opinion of the court, reference is made to the several cases in regard to the town site of Mankato heretofore determined by this court, and cited therein.

WILLARD & BARNEY, and JAMES GILFILLAN, for Appellant.

D. A. DICKENSON, for Respondent.

*By the Court.*—RIPLEY, CH. J.—This action is brought to recover a penalty imposed by an ordinance of the village of Mankato, for neglecting, after notice, to remove buildings, &c., from public grounds.

The plaintiff in its complaint alleges that the defendant, on the 1st of March, 1864, entered a building theretofore erected on the levee in said village, of which plaintiff is seized in fee, and the same is used as a public landing, and has been dedicated to the public for that purpose by the original proprietors, and was so prior to such entry, and that defendant has ever since occupied, maintained and kept said building on said levee, and has thereby obstructed, and obstructs the travel and free use thereof, and refuses to remove said building, though notified.

The defendant claims to own the land on which said building stands, as well as the building, and denies the dedication

The paper-book contains the pleadings, and an agreed "statement of the case in said action," by the counsel.

This agreed statement does not purport to contain all the evidence on the trial; neither does it give the charge of the judge in full; the verdict of the jury, or the grounds of appeal; and the return contains nothing more than the paper-book; but we understand that the verdict was for the plaintiff, and that this appeal is taken from a judgment entered thereon.

Under these circumstances, we need only consider the rulings, instructions, and refusals to instruct, of the court below, set out in the case, to which an exception was taken by the defendant.

It is to be premised, however, that it is evident that plaintiff claims title in the premises, only by dedication thereof to the public use, as a public landing or levee.

Supposing, as has been heretofore held by this court, that this would not vest the fee in the village, and that, therefore, a recovery could not have been had in this action on the theory of the complaint, [10 *Minn.* 82 ; 13 *Minn.* 13 ;] nevertheless, the case last cited decides that even the owner of the fee cannot assert a right of possession inconsistent with the uses and purposes for which the dedication was made, and the plaintiff as representing the public might maintain an action against him if he should attempt to exercise such an asserted right. Much more would such action lie for plaintiff against one who does so, not being the owner of the fee.

As to alleged erroneous rulings at the trial, it appears that the plaintiff was allowed to show, the defendant objecting, that in the spring of 1852, a company was formed for the purpose of laying out, and settling the town of Mankato ; that in that and succeeding years down to the entry of the town site, the company erected buildings, occupied by members of the company or those claiming under them, and made other improvements on the site selected ; that in 1852, it made a plat thereof, certifying thereon that it gave the streets, alleys, and public grounds, as therein described, for public use ; in 1856 a plat of out-lots, in connection with the plat of the original town, and in 1857, a plat of the whole, having thereon a like certificate as above, by which plats, as a general rule the town is built, and occupied ; that the application to enter the town site was made, by making proofs before the land officer at Wi-

nona, March 21, 1856, which application was procured to be made, and proofs presented by said company, who also furnished the money wherewith to enter the town; that after making the first plat, the company divided the lots among its members, except the land devoted to the public; that at the time the first plat (called the Folsom plat) was made, the company was in Mankato, and turned out and worked down the levee, which was then steep; smoothed it down and cut some brush.

Upon said plats, said levee is delineated as a space left open, fronting on the river, and including the land on which said buiding stands, and on said space is noted "levee."

The paper-book contains nothing of these plats but the levee and adjoining blocks. Without the plats, or a much fuller statement respecting them than is contained in this record, we cannot pass upon all the objections made to their competency; but it is sufficiently apparent, that they are too defective in the requirements of the statute, to be competent evidence to prove a statutory dedication.

But in respect to a dedication at common law, if the association which caused these plats to be made, sustained such a relation to the town site, as that any such dedication by it of the premises to the public use, aforesaid, could at all avail in that regard, then these plats were certainly competent evidence thereof.

The important question in a dedication of this kind, is the intention of the party claimed to have made the dedication. Any thing by which the intent may be established or disproved is material. *Case vs. Favier*, 12 *Minn.* 89. Therefore, in another case, a map of St. Paul, signed by the owners, was held properly admitted in evidence, as being a declaration by one of said owners, as to the plan of the town; and the fact that it was not indicated thereon that the premises in question, and

The Village of Mankato v. Meagher.

owned by him, were intended as a street, was held evidence to go to the jury of his intention not to dedicate; and whether the map was legally executed in accordance with the statute, was held to be immaterial. *Wilder vs. City of St. Paul*, 12 *Minn.* 192, 203–4. Plats made and acted upon as these were, must therefore be competent evidence of the intention of those who made and acted on them.

One objection peculiar to the Folsom plat, (one of the plats before mentioned) should, however, be noticed, viz.: that it purports only to be a copy from the records of Ramsey county, not certified by the officer having the custody of those records.

At the time this plat was recorded, the town site was in Dakota county, which was attached to Ramsey county for judicial purposes, and said plat was, therefore, by law to be recorded in Ramsey county. *Rev. Stat. ch.* 1, *sec.* 8, 18; *ch.* 31, *sec.* 6.

Blue Earth county was organized in 1853, (*Comp. Stat. p.* 74, *sec.* 31,) when it became the duty of the register of deeds to transcribe the plat into his records, upon which, it would have the same effect as an original record. *Rev. Stat. ch.* 46, *sec.* 33. The certificate of the register of deeds of Blue Earth county endorsed on the plat given in evidence, that it is a correct copy of the original, as copied from the records of Ramsey county, by the register of deeds of Blue Earth county, gives it the same effect as if it were the original.

The question recurs as to the efficiency of such a dedication by this company.

An occupant of a town site within the act of congress of May 23d, 1844, whether his rights to the land he occupies be vested, or whether they are still inchoate, may make a valid common law dedication; that is, he may estop himself from afterwards questioning his authority to devote any interest or

site to public use, at the time of such dedication.    *Mankato vs. Willard,* 13 *Minn.* 13–26.

To decide whether or not the acts of this company, indicating its intention to dedicate the premises to public use, are competent evidence, it is, therefore, by no means necessary to pass upon the extent of the right it acquired in the town site, by the acts and doings before mentioned, if it acquired any interest, as such occupant therein.    Unless the objection hereafter considered must prevail, there is evidence tending to prove a settling upon, and occupancy by it of the town site, in such a manner that it was not subject to pre-emption.    In such case, the company would be entitled to have a trust established and declared in its favor.    *Leech vs. Rauch,* 3 *Minn.* 443.

The selection of the land for a town ; surveying and platting it; improving and occupying portions; entering it as a town on proofs, and payment made by it, would be evidence tending to prove such a settlement and occupancy made by it.    *Castner vs. Gunthur,* 6 *Minn.* 119 ; *Weisberger vs. Tenney,* 8 *Minn.* 456.

If upon the whole evidence, its character as such occupant was not made out to the satisfaction of the jury, it would, of course, be wholly immaterial to them what the intention of the company might have been in respect of the premises.    The sufficiency of such evidence to that end does not of course concern us ; and as the right to the title of the lands embraced in this town site was perfect in some persons in *esse,* as occupants under the act on the 21st March, 1856, (*Leech vs. Rauch,* 3 *Minn.* 457 ; 6 *Minn.* 119,) if this company sustained the character of occupant, it would be immaterial whether lots, vacant in point of fact, were in law the common property of all the occupants, or otherwise.    As no person could acquire any right by occupancy after March 21, 1856, and as such occupant might estop himself, as against the public, if all occu-

pants did so, the case of the public would be made out, and proof that *this* occupant had so estopped itself, would, of course, be competent and material.

It is however objected, that all acts of this company were void, and that no dedication can be claimed through it; and the evidence which we have been considering, was, as already remarked, objected to by defendant, because; 1. It was immaterial and irrelevant; 2. That the company was formed for an illegal purpose, to-wit: the taking of a town site upon lands to which the Indian title had not been extinguished, and before the government survey; 3. Because no right of settlement, or priority of claim, could be based upon any settlement or occupancy prior to the extinguishment of the Indian title, and government survey; 4. That it is incompetent for a company to take a town site, under the town site law.

These objections were all, in our judgment, properly overruled. It is of course shown from what has been already said that if the last three objections are untenable, the evidence is material and relevant.

The treaty whereby the land comprising the town site of Mankato was ceded, was made Aug. 5th, 1851, and was ratified by the United States Feb. 24th, 1853. The government survey was made in May, 1855.

The question raised by the 2d and 3d objections were considered by this court in Carson & Eaton vs. Smith, 5 Minn. 78. It was expressly decided in that case, that a claimant under the town site act can have a valid possessory right in unsurveyed land. In that case the court was referred to the act of congress of March 3d, 1807, which like that of Jan'y 30th, 1834, upon which the appellant relies, prohibits all unauthorized settlement, occupation, possession or survey of such lands, and authorizes the removal of such settlers by force. The court, however, held that a claimant of part of the town site

of Winona, which was part of the same territory as this town site of Mankato, and ceded by the same treaty, might prior to such survey, have an interest therein under the town site act, that would be an interest in real estate which he might convey by deed.

The court also considered, that in taking notice that the treaty was ratified at said date, it would not ignore the fact that it was made long before that.date; that many people had thereafter entered upon the land, and extensive and valuable interests had grown up thereon, and that the legislature had recognized, and made provision for the protection of such interests, and that a large proportion of the titles of the state had grown out of the interests thus acquired; that supposing that said act of 1807, applied to territory acquired from Indian tribes, still the act of August 4th, 1854, extending the right of pre-emption to all lands in this state, whether surveyed or not, had always been construed, so far as the court had been able to ascertain, not only to permit rights to be acquired in the unsurveyed lands after its passage, but also to recognize such as had previously accrued.

It was only necessary to decide in that case, that such claimant might have an interest in real estate in October, 1853; that is, after the ratification of the treaty, yet it appeared on the pleadings, that the claim under which such interest arose, if at all, was made in 1851. It was open, therefore, like this claim to the town site of Mankato, not only to the objection that it was made upon unsurveyed lands, but upon land to which the Indian title had not been extinguished. It is, however, not only nowhere intimated that it would be invalid for the latter reason, but it is impliedly recognized as being, notwithstanding, good.

Indeed the above construction of the act of 1854, would, of

course, necessarily involve the rejection of any objection on the latter ground.

There can be no doubt that if the power of attorney then before the court had been dated prior to February 25th, 1853, it would not have been held inoperative with respect to said town site claim, because it was executed prior to the ratification of the treaty.

A new trial being ordered, because the court below, taking a different view of the case, had given judgment on the pleadings against the plaintiffs, the defendant on such new trial again moved for judgment on the pleadings, specifying the same grounds as those determined adversely to him upon the former appeal.

The motion was denied. The case coming again before this court on appeal, (*Carson et al. vs. Smith*, 12 *Minn.* 89,) it did not feel called upon to examine the grounds of the decision in the 5th Minn., and without expressing any opinion in that behalf, took that decision as the law of the case, so far as related to the questions determined by it, with an explanation on one point not here material. So in this case we shall not inquire into the soundness of the doctrines which, as above stated, we consider the case in 5 Minn. to enunciate with respect to the questions now before us. The sufficient reason is that this town site was entered upon proof of the very survey, settlement and occupancy of this company, thus made before the treaty was ratified, or the land surveyed by the United States. If the company's action was illegal, it was because the laws of the United States forbid it. But the United States officers have adjudged it to be sufficient proof of settlement and occupancy, and their decision is conclusive on us, (3 *Minn.* 448,) in any case in which a party claims land under the act.

If then, we could not avoid the title of one who claimed lots in Mankato by virtue of this settlement and occupancy,

because it was prior to the treaty and survey, on what principle could we question the title of the public to an easement derived from him, or what good purpose could be served by reviewing in this case, the decision in question?

It is true indeed, that though it appears in the case, as settled, that this company furnished the proof on which the town was entered, and that a certified copy thereof was given in evidence at the trial, it is, nevertheless, not incorporated in the paper-book, so that it does not appear on the face of this return, that the entry was made on proof of the settlement and occupancy in question.

No inference in the appellant's favor, however, can arise by reason of the omission to bring up the evidence; on the contrary, it would perhaps be a fair presumption in its absence, were this entry now before this court for the first time, that those who claimed, by virtue of such settlement and occupancy to own this town site, made proof thereof, and not of any other settlement and occupancy, in support of the application to enter it for their benefit,

But it is further to be considered, that the fact that they so submitted the proof of such settlement and occupancy, aforesaid, is spread upon the records of this court in other cases, involving questions arising under this very entry, as to ownership of lots (3 *Minn.* 448 ; 6 *Minn.* 119) ; and it has become a part of the judicial history of the state, which it would be childish in us to assume to ignore in this case.

The same consideration disposes also of the objection, that it is incompetent for a company to take a town site under the town site law. The government has decided otherwise as to this town.

Plaintiff also gave in evidence a plat made in 1855, by order of, and signed by a certain other association of persons, claiming to be proprietors of the town site of Mankato, upon which

said open space is denominated, "public landing," and upon which the said signers, certified, that they dedicated to public use, all public squares, streets and alleys therein; which was received subject to the defendant's objections thereto, upon all the grounds, and the same objections made to the other plats, as far as applicable.

The plat was admissible upon the same principles as those already considered; viz: as evidence of the intention of the signers who claimed to own the town,—it being for the jury to pass upon the sufficiency of such claim; and was clearly competent in view of the proof introduced by the defendant, that each signer was living in Mankato at the time, and claiming and improving portions of the town site.

Certain letters, addressed by the commissioner of the general land office, to one R. M. Young, described, in one thereof, as attorney of the proprietors of the town site of Mankato, were admitted, subject to defendant's objection.

The defendant says such testimony could only mislead the jury into supposing that such companies could by such acts make themselves masters or owners of the whole town.

The letters were offered in connection with the proofs of entry, and of the action of the department on the application and proofs, which are not before us, so that we cannot say that they may not have been properly admissible in the connection in which they were introduced. They would seem to have been put in as one link in the chain of evidence, that the United States had passed on, and adjudged sufficient; the proof of the old company's settlement and occupancy. As such, they would have been proper. Taken out of such connection, they seem immaterial; but it is not perceived how they could prejudice the jury in the way suggested, or otherwise. Styling Young, attorney for the proprietors of the town site of Mankato, has no tendency to show, to whom the com-

missioner alluded as proprietors, and there is nothing else in the letters that could *per se*, be supposed to refer to the claims of the old company, or any other company.

So much for the objections to plaintiff's evidence.

The defendant offered in evidence tax receipts for taxes paid upon the premises occupied by him, for the years 1861, 1862, 1863 and 1864, and being prior to the incorporation of the village, for state, county, town and road, taxes. These receipts were properly excluded. By stat. 1860, ch. 1. sec. 3, sub. 8, all public squares, or other public grounds, used exclusively for public purposes, are exempted from taxation; but the property taxed was a building, of which, with the ground on which it stood, the defendant and his grantors, claimed to be the owners, and were in the use and occupation. It would, therefore, be subject to taxation, although it were the fact, as the plaintiff claimed, that it was part and parcel of a public landing; and the receipts would have no tendency to disprove acceptance by the public of any dedication of the premises to public uses.

The cases of the City of Winona vs. Huff, 11 Minn. 119, and Wilder vs. City of St. Paul, 12 Minn. 210, relied on by appellant are not applicable.

In the first, the taxation offered to be proved upon the block in question and claimed as a public square, was for a period down to and including 1858. By the statute then in force, " all public or corporate property of the city, used or intended for corporate purposes," was exempted from taxation. *Rev. Stat. ch.* 12, *sec.* 4, *sub.* 2. Said square, if it came within this definition, would, therefore, have been exempt, whether it was, *in fact*, exclusively used for public purposes or not.

In the latter case, the property claimed by the city as a street, had been listed and sold for taxes by the city itself.

Evidence that the village trustees caused a sewer to be laid.

out of a straight course, so as to escape, and not interfere with the premises in question, was also properly excluded.

The first step to make it evidence to disprove an acceptance by the public of a dedication, would be to show that the trustees directed the change for some reason in some way connected with the fact, that defendant claimed to own the premises, free of the public easement. This is not done.

This disposes of the defendant's exceptions to rulings at the trial, which are urged by him in this court. · As. others which were taken are not insisted upon here, it is not necessary to consider them particularly. It does not appear to us that any of them were well taken.

The court charged the jury, "that to ascertain the defendant's title, you will have to examine his occupancy and the occupancy of those through whom he claims title, to see if they have done acts necessary to constitute an occupancy to give him title," and refused to charge as requested by defendant, "that if the jury find that the deed from the trustee to Parnell & Stoltz, (defendant's grantors,) purports to convey the title in fee, and the defendant has conveyance in fee from, or through them, for said premises, that the defendant is in this action to be considered as the owner in fee of the land in question."

The defendant urges, that the deed from the trustee makes the grantee the owner, but that from this charge and refusal, taken in connection with the 2d charge, viz: "that the rights of occupants became fixed on the 21st March, 1856, and that no right could be acquired by any settlement or occupancy afterwards commenced," (as were that of Parnell & Stoltz,) the jury would naturally be led to conclude, that if no occupancy by the grantees prior to March, 1856, were shown. the deed was not good, or that notwithstanding the deed, some

other person might still remain the owner, and be capable, after it, of dedicating the land.

Considering, however, that as already remarked, it has been decided in this court, that the right to the title of the land embraced in the town site of Mankato, was perfect in some person or persons in *esse* on March 21, 1856 ; that the judge to whom the patent was issued, became thereby seized of said town site in trust for the then occupants thereof, their heirs or assigns, according to their respective interests as they then existed, and was required by law to convey to them accordingly ; that such occupancy is, as it were, the title deed of the claimant, to which the law refers all persons, and that a deed by the trustees to another than one thus entitled would be an act done in contravention of the trust upon which he held the land, (3 *Minn.* 448 ; *Castner vs. Gunther,* 6 *Minn.* 114 ; *Coy vs. Coy,* 15 *Minn.* 119) we can perceive no error either in the charge or refusal.

For, since a trustee of an express trust to convey land, can pass the title thereof by his deed only to the *cestui que trust* or those claiming under him, the deed to Parnell & Stoltz could pass nothing, unless the judge were seized of the premises in question in trust for them, and as he was seized of the town site in trust only for the persons whose rights thereto were perfect on the 21st March, 1856, by virtue of the then settlement and occupancy of themselves, or those under whom they claimed, unless Parnell & Stoltz came within that category, he was not seized in trust for them.

The court also refused to give the following instruction requested by defendant ; " that the surveying, platting and recording towns, pre-supposes ownership in such persons, and the title must be in them perfected ; and to constitute a statutory dedication, all the requirements of the statute in

The Village of Mankato v. Meagher.

surveying, platting and recording town sites must be complied with."

The defendant takes the position, that the first branch of this instruction is almost identical with that employed in Weisberger vs. Tenney and Carson vs. Smith, *supra*. The extent of his error in this respect appears on inspection.

In the first case the language is, that Comp. Stat. ch. 26, in reference to surveying, platting and recording town plats, pre-supposes that the land so surveyed, &c., is the *property* of those laying out the town. In the latter case, the court say that the surveying and platting of a town site under the act of congress, is properly distinguished in Weisberger vs. Tenney, from the same acts performed under the statutes of the state "Our state law pre-supposes that the land so surveyed, is the property of those laying out the town."

A fair construction of the charge requested, would be, that the equitable owner of land could in no way affect the title to it, by a surveying, platting and recording a town site thereon, either under the act of congress, or the state law, though the holder of the legal title might be a mere trustee for him; a proposition which cannot be maintained, either in reason, or on authority. 12 *Minn.* 204; *Winona vs. Huff*, 11 *Minn.* 120.

The judge was therefore justified in refusing to give the instruction, though the second branch, taken by itself, lays down a correct rule of law, for he was asked to give the whole charge, not that branch alone.

The court charged at defendant's request, "that statements made by parties in possession of lands, as to the manner and character of their claims or possession, are only material in an action wherein the title is in controversy," with this modification, " which is the case in this action," to which modification the defendant excepted.

The modification was quite correct. It is true, that as sub-

sequently charged, and under the decisions of this court, the public could only have an easement in the land, which would not affect the title; and it is also true as a matter of law, in the abstract, that the defendant *might* hold the fee subject to such easement; but neither the pleadings nor the proof raise any such theory here. If the defendant owned the land, as he claimed to, his acts and those of his grantors, in using the building thereon in a manner inconsistent with the exercise of such easement in the land, tended to negative its existence.

The plaintiff, therefore, strives to show that the occupancy of defendant's grantors commenced after March 21, 1856; that, therefore, neither he, nor they, had any title to the land, whatever they might have to the building, in which case, of course, no such above mentioned use of the building, could have any such prejudicial effect as above stated. Title to the land was therefore the gist of the controversy.

The court also properly refused to give the following instructions requested by defendant, viz.: "Companies, or individuals, having improvements upon, or occupying portions of government lands, of town sites entered as a town site under the act of congress, acquire no rights to the unoccupied portions of said town site, by virtue of any constructive occupancy or claim, to the exclusion of other settlers upon such unoccupied portions, prior to the entry of such lands.

"All occupants of towns upon lands of the United States prior to the entry of such town, have equal interests in all unoccupied portions of said town site, in proportion to the extent of their respective occupancy."

Whatever may be thought of them, considered as abstract propositions, they were not the law for the town site of Mankato, as to which, this court had settled long before, that the right to the title of the lands embraced in the town site of Mankato, was perfect in some person, or persons in *esse* at the time the

The Village of Mankato v. Meagher.

proof was offered on the application of Judge Chatfield to enter the town, viz.: March 21, 1856, though it was not actually entered till 1858.  To give them, would, therefore, have been to mislead the jury, and erroneous.

The defendant also requested the judge to charge, that "unless it has been shown to the satisfaction of the jury, that the building in controversy, though upon the levee, is an incumbrance and obstruction to the free use of said premises as a levee, and that the use of the premises, at the time of the notice given, was necessary for the purposes of a levee, they must find for the defendant," which he refused, and defendant excepted.

Defendant also requested the judge to charge, "that it is not competent for the village to impose penalties for obstructing public grounds, unless the public has been in possession and use of such grounds," which he refused and defendant excepted

But the court did charge, "that the plaintiff cannot impose penalties, or maintain actions for incumbering the public levee, unless such incumbrances shall obstruct the use of such levee for levee purposes."

Without intimating an opinion upon the correctness of this instruction, it is sufficient to say, that the ground on which defendant contends that the instruction asked by him should have been given, is not tenable.  His argument is, that where the public right to any land is honestly and squarely controverted, and has never been established, to permit the public authorities to impose a fine or penalty on a man for standing by his rights, is opposed to every principle of justice.

It may be so, but the misfortune of a practical application of the argument to the case at bar, is that it requires us to assume the premises from which the conclusion is drawn.

We must presume, under the charge of the court, that the jury found that the premises were part and parcel of a public

landing, and that the building in question obstructed its use for the purposes of a public landing; and as the case is presented to us, we must also presume that the verdict was justified by the evidence.    If so, since every one is presumed to know the law, how can we say that the defendant honestly controverted the public right, or that he was standing by his right, in refusing to remove such obstruction on due notice, and in taking the chances of litigation.

Judgment affirmed.