SAMUEL LEECH, Appellant, *vs.* JOHN C. RAUCH, Respondent.

Under the "Town Site" act of Congress of May 23, 1844, a party claiming its benefits must show that the land he claims has been entered in accordance with the provisions of the act, and that Government has parted with the title. And upon this branch, nothing is pertinent save an inquiry as to whether the proper Land Office or Department, has authorized the entry of the land in question, as a town site. The State Courts have nothing to do with the question, as to whether the entry was properly or improperly made, as to whether sufficient or legal proof was made to authorize such entry, nor as to whether there was any proof at all. The decision of the officers of the Land office (or of the Department, in case of appeal,) in these matters, is final and conclusive. The duplicate is evidence of the fact of entry in accordance with the act, and that fact cannot be litigated in the State Courts.

The distinction drawn, between the *pre-emption* act of 1841, and the *Town Site* act of May 23, 1844.

The requisites of the latter, as to settlement and occupancy are complied with, when they are such as attain the object in view, namely, the use of the land *as a Town Site*, for the purposes of trade, commerce and manufactures. And the settlement need not be in person, nor require any cultivation of the soil.

When the settlement has been made in compliance with the act, and in such a manner that the land is "not subject to entry under the pre-emption laws," the occupants *eo instanti*, acquire certain vested rights, and are entitled to have the trust established and declared in their favor; and the delay of the Government to recognize their equities, by the delivery of the proper evidence of title, will not prejudice the rights of the occupants. Persons settling upon land so "occupied," and after it has been entered as a Town Site, do so with notice of such previous occupation.

The issues joined by the pleadings in this cause, are stated in the opinion of the Court. The case was tried in Steele County, upon a change of venue from Blue Earth County; and a verdict rendered in favor of the Respondent, Defendant below.

BRISBIN, SPENCER & GREEN, Counsel for Appellant.

WILKINSON & BARRY, Counsel for Respondent.

*By the Court*—ATWATER, J. This was an action brought by the Appellant in the District Court for the Sixth Judicial District, to recover lot number ten, in block twenty-seven, in the town of Mankato. The Complaint alleges that on the 14th of February, 1853, the Plaintiff, in conjunction with other parties therein named, selected lands in which lot ten, block twenty-seven, are embraced, being 318 88–100th acres, on the town site of Mankato; that at the time stated the Company took possession of, and made settlement on the lands under the municipal pre-emption law of 1844, and by themselves and those holding under them, built upon and

Leech v. Rauch.

continuously occupied, and ever since have occupied said lands as a town. That until the Government survey in May, 1855, the Plaintiff and others occupied said lands, and have always so continued, that such occupation was notorious, and that the Defendant had notice thereof. That as soon as the survey was made by the Government and the plots returned to the local office, to wit, about January 25th, 1856, the Plaintiff and others procured the proper Judge to make an application in due form to enter the lands under the provisions of the act of Congress for the use and benefit of the occupants according to their respective interests. The complaint further alleges, that such proceedings were afterwards had before the United States Land Office, that on the sixth of March, 1858, the lands were entered by the Hon. C. E. Flandrau, the successor in office of the County Judge who made the application, due notice of which was given. That the settlement and occupation, upon proof of which the entry was made, was that of the Plaintiff and others, and those holding under them, and that each subdivision of the lands had been continuously occupied by said parties. The Plaintiff further alleges that by conveyance from the several parties, he became owner in severalty of the lot in question, and claims to receive the fee simple thereof.

The answer denies the selection and settlement of the lands as stated in the complaint, and also the continuous occupation —and denies that the persons named in the complaint ever maintained improvements upon or occupied for town purposes any of the lands, except that two of the persons named settled upon claims embracing parts of the lands separately and occupied them until 1856, then abandoned them; that Plaintiff as an individual built certain houses on the lands but never personally occupied the same nor resided thereon, and occupied none of the lots except those built upon. It further denies notoriety of occupation, and denies that entry was made under or pursuant to application of Judge Chatfield, but avers that it was pursuant to application of his successor, Judge Flandrau, and denies that the settlement upon which the Government parted with its titles, was that of the parties named in the complaint,

and avers that it was the settlement of the actual residents of the town of Mankato. It also denies information of relinquishment and conveyance to Leech. The answer also denies that the parties alleged to have relinquished and conveyed to Plaintiff, ever settled upon and improved lot ten, block twenty-seven, and avers that only two of the parties ever lived upon the lands described in the complaint. The answer avers settlement by the Defendant upon the lot in question about June 28th, 1856, and continuous occupancy since, that it was Government land, and that Defendant's entry was made before the title passed from the United States, and that the lot was vacant upon the Defendant's entry.

The evidence taken upon the trial of the case is voluminous, and numerous exceptions were taken to the rulings of the Court upon the reception of evidence, and the charge to the jury. Much of this evidence is irrelevant to the real issues in the case. These issues are presented in a very inartistic form by the pleadings, which are also encumbered by matter having no legitimate connection with the real issues in the case. It will be unnecessary to notice more than two or three of these exceptions, as a correct ruling upon the points involved in these will be decisive of the case.

The Plaintiff claims the lot in question as one of the occupants of the town site of Mankato, entered under the act of Congress of May 23d, 1844. That part of the act applicable to this case reads as follows: "That whenever any portion of the surveyed public lands has been or shall be settled upon and occupied as a town site, and therefore not subject to entry under the existing pre-emption laws, it shall be lawful in case such town or place shall be incorporated, for the corporate authorities thereof, and if not incorporated, for the Judge of the County Court for the county in which such town may be situated, to enter at the proper land office and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof according to their respective interests. The execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sale thereof to be conducted under such rules and regulations as

may be prescribed by the legislative authority of the State or Territory in which the same is situated."

Under this act the United States Government permits the entry of a certain quantity of land which has 'been "settled upon and occupied as a town site," and designates the party who is to hold the title "in trust for the several use and benefit of the occupants thereof, according to their respective interests." For a party claiming, under this act, one of the first requisites is to show that the land he claims has been entered in accordance with the provisions of the law, and that the government has parted with its title to the same. Upon this branch of the case, nothing is pertinent save an inquiry into the simple fact, as to whether the proper Land Office or Department has authorized the entry of the land in question as a town site. The State Courts have nothing to do with the question as to whether such entry was properly or improperly made, as to whether sufficient or legal proof was made to entitle the applicant to enter : nor, indeed as to whether there was any proof at all. Those are questions entirely and only within the province of the Register and Receiver of the Land Office, and their decision thereon, (or that of the proper department when appeal is taken,) must be final and conclusive in the matter. The duplicate of the proper Land Office on such entry is evidence that the tract therein described·has been "settled upon and occupied as a town site," in accordance with the law, and that fact cannot be litigated in the State Courts. Consequently, any evidence having for its object to prove that the settlement and occupation, under which the entry was made, was insufficient for such purpose, is irrelevant and improper, save as proving who the occupants were in behalf of whom the application was made.

In order to show a right of recovery in this action, the Plaintiff must prove that he was an "occupant" of the premises, in the sense intended in the act of Congress above referred to. The pleadings allege that the Plaintiff was one of the Company who selected the town site of Mankato, that the Company settled upon the said site, and built upon and occupied the same. Proof was introduced tending to estab-

lish these allegations, and the sufficiency of this proof was a proper subject for the consideration of the jury. Upon the subject of occupancy the Court instructed the jury as follows, as appears from the case, viz:

"The occupancy contemplated by the municipal pre-emption law of Congress, the act under which the parties to this action respectively claim that they are entitled to the relief prayed for by them in the complaint and answer in the action, is of the same character as the occupancy required in the agricultural pre-emption act. That the proof of occupancy in both cases must be the same; that before a person can avail himself of the benefit of the municipal pre-emption law, he must show himself to be a resident upon the town site and in personal occupancy of the premises to which he asks title,"—to which charge exception was taken.

This charge was incorrect, and calculated to mislead the jury. The language of the pre-emption act of 1841 is essentially different from that of the municipal pre-emption act of 1844. The former is limited as to the age of the person entitled to its benefits, as to his nativity, requires the party to make settlement "in person," and to "inhabit and improve the same," and "erect a dwelling thereon," prohibits him from leaving his own land to make settlement on the government land, and also from owning three hundred and twenty acres at the time of making his pre-emption. On all of these points the act of 1844 is silent, and where the pre-emption right has been so carefully guarded in the one case, and in another and subsequent act all these restrictions are omitted, it would certainly be a strange construction to hold that they must be supplied by implication. It is true, both acts speak of a settlement, but the act of 1844 defines what settlement is intended, viz: "settled upon and occupied *as a townsite*," while the previous act, both in terms, and in the construction which the Department has placed upon it, limits the settlement to agricultural purposes. Nor, going outside the letter of the statute, do we find any authority in the reason of the case, for placing such construction upon the act, as was given by the Court below. The object and idea of settling and building a town is not for

the purpose of agriculture, but for that of trade. And being used for purposes of trade, it cannot (at least only to a limited extent) be used for cultivation of the soil. And this idea was evidently entertained by Congress in framing the law of 1844, in the use of the language, " and therefore not subject to entry under the existing pre-emption laws." The intent was to provide for cases to which no law then in existence applied. As the object of the settlement and occupancy of a townsite is totally different from that of a settlement under the act of 1841, no legitimate inference can be drawn that the particular manner or requisites of settlement and occupancy in each case must be the same. And the requisites of the act of 1844, as to settlement and occupancy, are complied with, when these are such as to attain the object in view, namely, the use of the land *as a townsite*, for purposes of trade, commerce or manufactures. It is obvious that such a settlement need not necessarily be in person, nor require any cultivation of the soil. A still further argument might be drawn against the construction placed upon this act, by the learned judge before whom the cause was tried, by showing that the abuses, which the restrictions in the law of 1841 were designed to prevent, cannot, from the nature of the case, obtain under the act of 1844, and that therefore it could not have been intended that these restrictions should be applied to the last named act. But it is unnecessary further to dwell upon this point.

The question of occupancy, as before remarked, becomes material in this case, only so far as may be necessary to show *who* the occupants are or were for whose benefit the trust was created. And in this connection it will be proper to inquire, whether there is any limit as to time, within which a person must show himself an occupant, in order to claim the benefit of the act of 1844. While the act does not in terms fix any limit, a careful examination of its provisions, will aid in determining the question. It will be observed that before it is lawful to enter land under this law, it must have been settled upon and occupied as a town site. If such be the case it may be entered for the "several use and benefit of the occupants

thereof." This latter clause is in close connection with that prescribing how the land shall be occupied, and it is a natural inference that the occupants referred to in both clauses, are the same persons. Government does not part with its title until a certain condition or conditions have been complied with. The condition is, that the land has been settled upon and occupied in such manner, that it is not "subject to entry under the existing pre-emption laws." When such settlement has been made, the occupants under this act acquire certain vested rights. They are entitled to have a trust established and declared in their favor. The Government having decided that at a certain point of time, sufficient improvements and of such a character have been made, as will render the land not subject to entry under existing pre-emption laws, in consideration thereof, permits the entry thereof, at the minimum price, and for the *benefit* of the occupants. There is much reason why these benefits should accrue only to the parties and their assigns, who have so improved the land, as to render it subject to entry under this act. Such improvement necessarily implies the expenditure of a considerable amount of money, time, and labor. If the parties making these investments are not entitled to the benefits of the act, they are without remedy from any other source. These benefits are, the acquisition of the land at the minimum price. If, having fully complied with all the conditions entitling them to the entry of the land, or at farthest, when by proper proof they have shown that they have complied with these conditions, they are not then entitled to these benefits, *eo instanti*, it is impossible to define or limit the time, either from the act itself, or in reason, when they shall be entitled to receive these benefits. The right of entry is predicated upon the performance of certain acts, these acts having been performed, the land officers decide that the right exists—it is as perfect then as it can ever become. And the right must exist in favor of the persons who have performed the conditions on which it is based. The proof having been submitted and found sufficient, there is nothing further required of, or that can be done by the occupants, to give them a better right than they then possess under the act

of 1844. They have acquired an equitable right to such land as they have shown has been settled upon and occupied in accordance with the law, and are entitled to have the trust instantly established and declared in their favor. Nor can this right be in any manner affected by any delay on the part of Government to recognise it by the proper evidence of title, since the right is in no manner based upon the existence of such evidence. The duplicate and patent are merely the evidence of the existence of the right previously acquired, convenient and perhaps necessary for the enforcement of the right, but not conferring it. They are the effect and not the cause. Were the rights of the occupants to remain in abeyance and uncertainty, until, and contingent upon the issuance of the patent by Government, the benefits to be derived from the act would be comparatively of little worth. For from the delays incident to the hearing of appeals, and the lack of the necessary force in the proper department, much time usually elapses after the proof is perfected before the patent issues. The entry should be made by Government at the time the proof is admitted, if the same is found sufficient, and its failure to discharge its duty in this respect should not prejudice the rights of the then occupants. If in the case at bar, the proof offered on the 21st of March, 1856, was that on which the entry was permitted, then the entry should be held to relate back to that date, so far as the rights of the occupants may be affected by the date of the entry.

If this view be correct, then the refusal of the Court below to charge the jury in the following language, was error, to wit:

"If the jury find from the evidence in the cause that the proof of occupation and settlement upon which the land embraced within the town site of Mankato, was afterwards entered, was made at the proper land office on the —— day of March, 1856, and if they further find from the evidence that the settlement and occupation of the Defendant, did not take place until some time in the month of May, 1856. In that case they must find against the Defendant, he not being an occupant within the meaning of the act of Congress; that

as a matter of law the entry of the town site relates back to the date of proof, and the rights of contesting occupants are determined as they existed at that date."

It is true that the request to charge as above stated, standing alone as an abstract proposition might not be strictly correct, as parties might have derived equitable interests subsequent to proof made from those who were occupants at the time of such proof. But taken in connection with the pleadings before the Court, we think the request was proper. For the Defendant does not pretend to derive his title from any occupant of the town site of Mankato, but claims as an original settler thereon. Whether his answer as it is stated in the case before this Court, sets up sufficient facts to entitle him to affirmative relief, might well admit of doubt were the question raised. But as no objection has been raised to it on that ground, it is not necessary to consider the point.

The counsel for the defendant urges that a construction of the act of 1844, by which it should be held that only those who were occupants at the date of the application to enter, were entitled to the benefits of the law, would lead to great wrong and injustice. And he supposes the case of a shrewd speculator, who might select a favorable location for a town site, and without making settlement, and in order to prevent others from securing any rights which might arise from settlement and occupany, should induce the Judge to make application to enter the land as a town site, but should defer making proof until it suited his convenience to make settlement and occupy. In the mean time, other persons, finding the land vacant, settle upon and occupy it. The Counsel affirms it would be monstrous to hold that these last parties had no rights, because an application had been previously filed by the Judge to enter the land as a town site.

It is a sufficient answer to the objection to state that the case supposed is by no means analogous to the one at bar. The Counsel for the Plaintiff did not request the Court to charge, that the rights of the occupants must be determined as they existed at the date of the application to enter the town site, nor does this Court so hold. We propose to go no far-

ther in this case than to hold that the right to the title of the lands embraced in the town site of Mankato, was perfect in some person or persons *in esse*, at the time the proof was offered on the application of Judge Chatfield to enter the town site, if the entry was actually made on such proof. Such proof must have shown that the land was not vacant, and that application had been made in accordance with the law. No injustice could therefore be done to those settling upon the premises after that date, as they do so with notice of previous occupation. If they choose to take the risk of the sufficiency of this occupation to vest title in the claimants, they cannot complain if the result should be adverse to their interests. It would lead to far greater injustice by holding that the settlers upon and occupants of a town site, having complied with all the provisions of the act entitling them to enter the premises, can yet acquire no rights which are not subject to be divested by strangers, until actual entry of the site. It would open a wide door to litigation, and go far to defeat the beneficent provisions of the law.

We think the Court below also erred in some of its rulings on questions concerning the introduction of evidence. But it is deemed unnecessary to discuss those points, as a correct ruling upon the fundamental issues of the case, which have been dwelt upon at some length in this opinion, will probably relieve the case of its principal embarrassment. A new trial is granted.