Coy et al. v. Coy et al.

WILLIAM A. COY, et al.,

*vs.*

JULIA A. COY, et al.

Prior to the 21st March, 1856, the date of the application to enter the town site of Mankato, A had become an occupant of lot 1, block 10, in said town, within the meaning of the act of congress of May 23d, 1844, entitled "An act for the relief of citizens of towns upon lands of the United States under certain circumstances," and so continued to occupy till May 29th, 1856, when she sold the same to plaintiffs' father, and executed and delivered to him a quit claim deed thereof, who entered thereon and occupied it with his family till his death, intestate, on the 28th May,

1857, leaving a widow, the defendant Julia A. Coy, and the plaintiffs, his children, with two others, since deceased; said widow and children continued to live on the premises till 1860, up to which time all said children were minors. The statement required by the territorial act of March 3d, 1855, sec. 4, was not filed by plaintiffs, or any one for them, but Mrs. Coy seasonably filed a statement by which she claimed to be entitled to receive from the trustee under the act of congress, a conveyance of the title in fee of said lot. Said trustee, on Sept. 17th, 1858, executed and delivered to her a deed, purporting to convey said lot to her in fee, and in execution of the trust upon which he held the same under said act, and defendants Branson and Heinze, claim through sundry mesne conveyances from her to own said premises, for which they paid a valuable consideration in the belief that their title under said deed to her, was perfect. *Held*, that on the issuance of the patent to the trustee, he became seized of the legal title to said lot in trust for the heirs of said Coy, and that those claiming under Mrs. Coy took with constructive notice of the plaintiffs' rights as such heirs, and are in equity, trustees for them of the legal title, according to their respective interests. *Held also*, that a reasonable construction of said territorial act requires the general words of section 4 to be so limited and restrained, as not to include minors, and that they are not therefore debarred from maintaining this action, by reason of their failure to file such statement. Judgment reversed, and a judgment directed for conveyance by defendants Branson and Heinze to plaintiffs of their respective interests.

This action was commenced in the district court for Blue Earth county by William A. Coy, James B. Coy, Amelia R. Coy, and Florence Coy, against Julia A. Coy, Lewis Branson, Christiana Heinze, and Charles Heinze her husband, Z. Paddock, and William A. Boynton. The plaintiffs' complaint is as follows:

"1. The complaint of the plaintiffs shows that one Peter Frenzel first settled upon and improved lot one, in block ten, in Mankato, according to Folsom's and also Bruner's plats thereof, situate in the county of Blue Earth, and State of Minnesota, some time in the year 1853, and continued the occupancy thereof until the 29th day of May, 1856, at which time he sold said lot, and executed a deed thereof, to

Ariel Coy, who thereafter occupied said lot until his death, which occurred on the 28th day of May, 1857.

2. That he died intestate, and left the defendant Julia A. Coy, his widow, and the plaintiffs William A. Coy, James B. Coy, Amelia R. Coy and Florence Coy, his children, all of whom were then minors, and under the age of twenty-one years. He also left Charles Coy and Frank Coy, also his children, who died the spring of the year 1859, and who at the time of their death were minors and were unmarried, and left no other children.

3. That in the month of May, 1855, the public lands comprising the town site of Mankato, of which said lot one forms a part, were surveyed into governmental subdivisions, and on the 21st day of March, in the year 1856, the judge of the county courts of the county of Blue Earth in this State, made the proper proofs and application to the land officers of the United States, for the entry and purchase of said town site lands, and that on the 10th day of June, 1858, a patent of said land was issued by the government of the United States, to the said judge, in trust for the occupants of said town site, as provided by the act of Congress entitled "An act for the relief of citizens of towns upon lands of the United States under certain circumstances," passed May 23d, 1844. That in the month of March, or April, 1858, the said judge published a notice of the entry of the lands comprising said town site, and containing a description thereof by posting a copy of said notice in three public places in said town and village of Mankato, and also by publishing a copy of said notice once in each week for three successive weeks in a newspaper printed and published in the county of Blue Earth.

4. The said Julia Coy filed a statement in writing with the said judge claiming to be the occupant and owner of

said lot in her individual right; and that the plaintiffs, William A. Coy, James B. Coy, Amelia R. Coy, and Florence Coy, were minors during the whole period when such statement was required by law to be filed by the claimants of said lot.

5. That on the 18th day of September, 1858, Lewis Branson then being judge of the county courts of Blue Earth, and holding said lot in trust, wrongfully conveyed the same to the said Julia A. Coy.

6. The said Julia A. Coy afterwards executed a deed of said lot to the defendant Zachariah Paddock, and he executed a deed thereof to the defendant William N. Boynton, and he executed a deed thereof to the defendant, Lewis Branson, and he executed a deed of the north-east one-third thereof to Christiana Heinze, who is the wife of the defendant, Charles Heinze.

7. The plaintiffs, William A. Coy, James B. Coy, Amelia R. Coy and Florence Coy, have never parted with, or released in any manner, any portion of their interest in said lot. "

The plaintiffs demanded, that by the judgment of said court, the said lot should be declared to belong to them, &c., &c.

Issue was joined, and the cause was tried before the court, without a jury, who found as matters of fact:

"*First.* That all the facts in the plaintiffs' complaint are true.

*Second.* That the defendants Paddock, Boynton, Branson, and Heinze, were severally purchasers in good faith, and for a good and adequate consideration.

*Third.* That none of the plaintiffs ever made, signed or executed any statement in writing containing any description of the lot in question, or any part thereof, or of any in-

Coy et al. v. Coy et al.

terest or estate therein, and delivered the same to the judge
holding the same in trust, nor did they, or either of them,
ever cause or authorize such statement to be so made, signed
or delivered, as required by *Section four* (4), *Chapter* 42, *of
the General Statutes of Minnesota.*

*Fourth.* That all other issues in the case are not sus-
tained by the evidence, and therefore false and untrue, not
including any facts admitted by the pleadings."

Judgment was ordered and entered for the defendants,
dismissing the action, and for costs. The plaintiffs appeal
from the judgment. All other matters, commented upon
by the court, and not appearing in the foregoing statement,
are sufficiently stated in the opinion.

FRANKLIN H. WAITE for Appellant.

JAMES BROWN, DANIEL BUCK, and WILKINSON & WOL-
FOLK, for Respondents.

*By the Court*—RIPLEY, CH. J.—The lands comprising the
township of Mankato were entered on the 6th of March,
1858, and the patent therefor issued on the 10th of June, 1858.
The entry was made on application and proof submitted
March 21st, 1856, and the entry related back to that time, and
the judge to whom the patent was issued, became thereby
seized of said town site in trust for the then occupants there-
of within the meaning of the act of Congress of May 23d,
1844, to their several use, according to their respective in-
terests, their heirs or assigns. *Davis vs. Murphy,* 3 *Minn.*
119. *Leach vs. Rauch,* 3 *Minn.,* 448. *Castner vs. Gun-
ther,* 6 *Minn.,* 119. *Weisberger vs. Tenny,* 8 *Minn.,* 456.
The execution of which trust was by said act, as to the dis-
posal of the lots in said town, and the proceeds of sales

thereof, to be conducted under such rules and regulations as the Territorial Legislature might prescribe.

The Territorial Act of March 3d, 1855, passed under this authority, required the trustee, within 30 days after the entry, to give three weeks public notice thereof. In the case at bar this is said to have been done in March or April, 1858. By section 2, he is required, by a good and sufficient deed of conveyance, to grant and convey the title to each and every block, lot, share, or parcel of the land, to the persons having the right of possession or occupancy thereof, according to their respective interests as they existed at the time of the entry, or their heirs or assigns.

By section 4, claimants are required, within sixty days from the first publication of such notice, in person, or by a duly authorized agent or attorney, to sign and deliver to the trustee a statement in writing of the nature and extent of their claims, and all persons failing to do so within such time, "shall be forever barred the right of claiming, or recovering such land, or any interest or estate therein, or in any part, parcel, or share thereof, in any court of law or equity." *By the Gen. Stat. ch.* 42, *sec.* 4, the words "as against adverse claimants," are inserted after "shall," which, however, leaves the provision the same, in principle; and if otherwise, plaintiffs' rights must be determined with reference to the act then in force. After the expiration of the sixty days, the trustee, on request and payment or tender by the claimants entitled to any lot, or share, of the proportionable share of his charges falling thereto, shall execute and deliver to such claimant a deed of conveyance thereof, as prescribed in the 2d section, and according to said statement. Peter Frenzel, being on said 21st March, 1856, such occupant as is contemplated by the act of Congress of lot one in block ten in said Mankato, continued so to occupy

till May 29th, 1856, when he sold the same for $250 to Ariel Coy, and executed and delivered a quit claim deed thereof to him, who entered thereon, and occupied it with his family till his death intestate, on the 28th May, 1857, leaving a widow, the defendant, Julia A. Coy, and the plaintiffs, his children, with two others deceased since 1859. The widow and children continued to live on the premises till September, 1860, up to which time, all said children were minors, and of those since deceased one was two and a half years, and one three months old, at their father's death. If Frenzel had not sold to Coy, the trustee would have been seized of said lot in trust for him, as, but for Coy's decease, he would have been for the latter. Coy's interest descended to his heirs, and the patent vested the title in the trustee in trust for them. See cases cited above.

The required statement was not filed by plaintiffs, or by any one for them, but Mrs. Coy on the 27th April, 1858, filed a statement by which she claimed to be entitled to receive a conveyance of the title in fee of said lot.

Defendant Branson then judge of the county court of the county of Blue Earth, on the 18th September, 1858, executed and delivered to her a deed purporting to convey said lot to her in fee, and in execution of the trust upon which he held the same as such judge. Mrs. Coy on the 23d April, 1859, executed and delivered a warranty deed thereof to defendant Paddock. He on the 30th of October, 1859, executed and delivered a warranty deed thereof to defendant Boynton, who on the 7th January, 1865 executed and delivered a warranty deed thereof to said Branson, who on the 13th October, 1865, executed and delivered a warranty deed of the northwest third thereof to defendant Heinze. Mrs. Coy's occupation was not adverse to plaintiffs; but if it were, she had acquired thereby no title

to the lot, as it commenced subsequent to March 21st, 1856. *Leach vs. Rauch*, 3 *Minn.*, 449. *Castner vs. Gunther*, 6 *Minn.*, 119.

As widow of the *cestui que trust*, she had an equitable claim to dower, but her filing in so far as it claimed the fee, was simply an assertion of a groundless claim. Branson's deed to her was therefore in contravention of the trust upon which he held the lot. Her filing did not change his duties in this respect. The law required him to convey to the person entitled, (Act March 3d, 1855, sec. 2,) and though by section 11, the deed is to be "according to the statement" filed, there is nothing whatever in the statute that makes the statement conclusive on the trustee, or that warrants the inference, that after the expiration of sixty days he is at liberty to convey to any person who may have filed on the land, notwithstanding such person may have no right to it.

And there is nothing in the act of March 3d, 1855, to prevent the trustee from conveying to the person entitled, after the expiration of the sixty days, (there being no adverse claimant,) though such person might not have filed within the time.

As all are presumed to know the law, Branson, and all claiming under him, must be deemed to have known, at the time of the several conveyances in question, that the trust upon which he held the land, as expressed in the patent, was for the person having the title by occupancy on the 21st March, 1856, his heirs or assigns. Having express notice of this fact, they were bound to inquire who that person was, and Frenzel's occupancy of the land on the date referred to, was, as it were, his title deed, to which the law referred all persons whatsoever.

In this view, it is immaterial whether or not the defen-

dants, or any of them had any actual notice of Frenzel's, or Coy's, or plaintiff's occupancy, or of Frenzel's deed, or of the effect of that deed as constructive notice.

To say that purchasers from Mrs. Coy, were at liberty to rely on the recitals in Branson's deed to her, (to the effect, that she had been duly determined to be the person entitled,) or on her filing, or on the fact, that she lived on the lot at the time of the filing, and were not bound to enquire who the occupant was, on the 21st March, 1856, is as unreasonable as to say, that a recital that the vendor in a deed is unmarried, will bar his widow from claiming dower as against a purchaser who bought, relying upon such recital, and in ignorance of her existence. That the description of the land in the patent is by government sub-divisions, and not by lots, is immaterial. The prerequsite of the entry is, that the land has been settled upon and occupied as a town site, and when so entered, it is in trust for the several use and benefit of the occupants, according to their respective interests, and though actual platting may not be a prerequisite to the entry, the act of congress contemplates that the land has been divided into lots, and the patent, as in this case, specifies that the entry is for the several use and benefit of the occupants of the town of Mankato, according to their respective interests therein, and all concerned are therefore affected with notice, and bound to inquire what those interests are.

In the case of *Leach vs. Rauch*, 3 *Minn.* 449, it is held that persons settling upon another lot in this town subsequent to March 21st 1856, were affected with notice of a previous occupation thereof, by the fact of the entry of the town site, upon proof made, at that date, as the proof must have shown that the land applied for was not vacant, and that application had been made in accordance with the law.

This not only disposes of the objection last alluded to, but it is not perceived why, on principle, the same facts should not be deemed notice of the rights of Frenzel, and those claiming under him.

It is also insisted that the deed from Frenzel to Coy is void for uncertainty.

Its effect as constructive notice to third parties need not be considered, but no reason appears why it did not pass Frenzel's interest to Coy. There is no ambiguity or uncertainty on the face of the instrument, and there is no evidence that there was not then a recorded plat of Mankato, in which the lot was described as it is in the deed. It appears to be the correct description of the lot, as the town site is actually sub-divided and occupied, and the answers refer to the lot, and claim title in it, by that description, and it does not appear, that it is otherwise described in any of the deeds.

If there was a plat then on record, so describing it, the presumption is, that Frenzel referred to it; and to pass the title it was not necessary that the plat should be legal, or legally recorded, but only that the land should thereby be in fact capable of identification.

Those claiming under Mrs. Coy therefore took with constructive notice of plaintiffs' rights, and are in equity trustees of the legal title for them, according to their respective interests.

But it is insisted that plaintiffs' failure to file the above mentioned statement, debars them, according to the provisions of section 4, aforesaid, from maintaining this, or any action for relief. Taken literally these provisions include minors as well as adults. There are cases however in which the law implies an exception to general words in a statute. In *Beckford vs. Wade*, 17 *Ves. Jr.* 87, the true rule on this

subject is said to have been laid down by Sir Eardley Wilmot in his opinion in the House of Lords, in the case of *Buckinghamshire vs. Drury*, as follows: "Many cases have been put where the law implies an exception, and takes infants out of general words, by what is called a virtual exception. I have looked through all the cases, and the only rule to be drawn from them is, that when the words of a law in their common and ordinary signification are sufficient to include infants, the virtual exception must be drawn from the intention of the legislature, manifested by other parts of the law, from the general purpose and design of the law, and from the subject matter of it." In the same case (*Beckford vs. Wade*) Sir W. Grant says: "General words in a statute must receive a general construction, unless you can find in the statute itself some grounds for limiting and restraining their meaning by reasonable construction, and not by arbitrary addition or retrenchment."

In the present case, we think, following the rules above cited, that there is, upon a reasonable construction of this statute, ground for so limiting and restraining the meaning of the general words used in section 4, as not to include infants. In the first place, it is not to be presumed, considering what the authority was, which by the act of Congress was vested in the Legislature, viz: to prescribe rules for the execution of an existing trust for the benefit of occupants, that that body intended, in this section, to prescribe a rule the practical operation of which, would in any case destroy rights which had become vested before such regulations could take effect. *Leach vs. Rauch*, 3 *Minn.*, 448. Yet, the facts in the present case are sufficient to show, that such, in many cases, must be its practical operation, if it be held to apply to infants. It would close on the rights of the heirs of Ariel Coy, not only while they were all minors, but

while several were incapable, by reason of their youth, of understanding what they were, if indeed, any of them knew of their existence.

The practical injustice of such construction here appears in a very strong light, since thereby an infant three months old, in actual possession, whose rights, through ignorance, probably, not by design, had been disregarded by its mother, to her own benefit, would be debarred of all remedy. The filing is for the information of the trustee as to the claimants of the respective lots, and though expedient, as conducing to a more speedy execution of the trust, we know of nothing in the past or present condition of the country, making it necessary that a failure to file on the part of an infant, should be attended with such results. But that infants were not intended to be included, is we think fairly to be inferred from section 4, itself, for it requires the doing by the claimant of acts, of all of which an infant is not by law presumed to be capable. In point of fact the vast majority of minors are not of sufficient discretion to sign and file in person, or to appoint an agent, or attorney to sign and file the required statement. And this want of discretion the law imputes to all. And it is very noticeable, that no authority is given to any guardian, or executor, or administrator, to whom the law intrusts the interests of infant heirs at various stages, to make or file any such statement for them. Such an omission is unaccountable, if we suppose that this section was intended to apply to them. Again, it is plain the provisions in section 5, and subsequent sections, for settling disputes in case of adverse claims to the same lot, all refer to a person of full age, and sui juris; for an infant could not bind himself by any agreement such as these contemplated, nor by a submission to arbitration, nor himself bring or defend the actions, or take part in the proceedings which are there

Coy et al. v. Coy et al.

provided for, and this being so, it is reasonably to be inferred, that the statements to be given in evidence by such adverse claimants were also meant to be required only of persons of full age. We might refer to other parts of the statute in this connection, but we think that what has been already cited sufficiently justifies our opinion, that a reasonable construction of this act requires the general words of section 4, to be so limited as to except infants from their operation. The plaintiffs may therefore maintain this action, notwithstanding its provisions, nor, since the defendants have not demurred to the complaint for want of parties, is the fact that the present judge of the county court is not made a party, a bar to relief as against them; nor is he indeed a necessary party. Holding as we do, that the defendants Branson and Heinze are trustees of the legal title for the plaintiffs, to the extent of the respective interests of the latter, adequate and complete relief can be given as the case now stands, by judgment of the district court, that said defendants convey to plaintiffs accordingly, that is, as we understand it, to each of the plaintiffs, seven undivided thirtieths of the lot, subject to the dower therein of Mrs. Coy, or in default of such conveyances, that the same title pass by the judgment.

The judgment of the district court is reversed, and the judgment above mentioned will be entered in that court.