[Civil No. 145.   Filed July 8, 1886.]

[S. C. 11 Pac. 312.]

JAMES S. CLARK et al., Plaintiffs and Respondents, v. BENJAMIN TITUS, Defendant and Appellant.

1. PUBLIC LANDS—TOWN SITE ENTRIES—§ 2387 REV. ST. U. S. 1878 PROVIDES FOR ENTRY IN TRUST—EXECUTION OF TRUST AS TO DISPOSAL OF LOTS TO BE UNDER TERRITORIAL REGULATIONS— SPECULATIVE CONVEYANCE, BREACH OF TRUST—NO POWER TO CONVEY BUT TO OCCUPANTS—PURPOSE OF U. S. STATUTE TO PREVENT SPECULATION—§ 11, COMP. LAWS, 1877, CONSTRUED AND HELD VOID—TOWN SITE COMPANIES.—Act of Congress (Rev. St. U. S. 1878, Section 2387) provides that the ''corporate authorities'' may enter at the proper land office land settled and occupied, in trust for the several use and benefit of the occupants thereof; and that the execution of such trust as to the disposal of the lots shall be under such regulations as the state or territory may by law provide. The deed by Randall, Mayor, of 2168 lots out of 2394 to four persons, not in severalty as occupants, but as tenants in common, was a violation of the trust imposed upon him by law. He had no power to convey title to any one but to occupants. Any act of the legislature which would create a breach of such trust is void. §11,

c. 89, p. 585, Comp. Laws, 1877, attempting to give a town company or persons who select or lay out a town-site any advantage over any other occupant, reviewed and held inoperative.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Cochise. Reversed.

The facts are stated in the opinion.

Thomas Mitchell and John Haynes, for Appellant.

That the facts set forth in the 1st and 2nd findings gave the plaintiffs no title appears from the following considerations:

1—That the title to the public domain can be obtained only in the manner prescribed by the Acts of Congress, and those acts nowhere prescribe a declaratory statement such as *Clark et al.*, filed March 5, 1879. *Wilcox* v. *Jackson,* 13 Pet. 498-517; Rev. Stat. U. S. 2387-2388-2389.

2—That private surveys such as they caused to be made prior to that date, conferred no right or title. *Smith* v. *United States,* 10 Pet. 334; *United States* v. *Hanson,* 16 Pet. 199; *Glenn* v. *United States,* 13 Pet. 256; *Mackay* v. *Dillon,* 4 How. 447; *Les Bois* v. *Bramell,* 4 How. 457.

3—That Section 3633, Compiled Laws Arizona, in so far as it attempts to change the trusts set forth in the patent (following the language of the Act of Congress) is simply inoperative, the legislature possessing no such power. *Wilcox* v. *Jackson,* 13 Pet. 517; *Winfield Town Co.* v. *Maris,* 11 Kan. 148; Organic Act.

That the mayor's deed to Clark is void will appear from the following considerations:

1—The trusts upon which the mayor held the townsite as set forth in Rev. Stat. U. S., Sec. 2387, is: "for the several use and benefit of the occupants thereof, according to their respective interests." The patent uses the word "inhabitants" instead of "occupants," but the words of the act would probably be held to control. If not, however, the change of the word cannot help the plaintiffs. This trust

has been passed upon in a number of cases, and it has been uniformly held that "occupants" meant actual *bona fide* occupants, and that none but such an occupant was entitled to a deed from the mayor. *Ricks* v. *Reed,* 19 Cal. 551; *Treadway* v. *Wilder,* 8 Nev. 98, 9 Nev. 67; *Lechler* v. *Chapin,* 12 Nev. 66; *Cofield* v. *McLellan,* 16 Wall. 331; *Hussy* v. *Smith,* 99 U. S. 20; *Stringfellow* v. *Cain,* 99 U. S. 610; *Folsom* v. *Dewey,* 103 U. S. 738.

It has always been held that the community at large are the beneficiaries of the trust as to the vacant and unimproved parts of the townsite. Cal., Hittel's Codes and Statutes (1876), Vol. 11, p. 1630, Sec. 15,996; Compiled Laws of Nev., Secs. 3863, 3869; *Windfield Town Co.* v. *Maris,* 11 Kan. 128; *Denver* v. *Kent,* 1 Colo. 336.

Section 2387 Rev. Stat. U. S. provides: "The execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sale thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated."

Section 2391 reads: "Any act of the trustee not made in conformity to the regulations alluded to in section 2387 shall be void."

The legislative authority of this Territory has not made any regulations "as to the disposal of the lots in said town, and therefore, the mayor's deed for the unoccupied lots is manifestly void." It was his duty to await the action of the legislature. *Denver* v. *Kent,* 1 Colo. 336.

Section 3633 Compiled Laws Arizona does not prescribe any regulations as to the disposal of lots, it simply disposes of them, something which all the cases agree the legislature has no power to do.

G. G. Berry, for Respondents.

A careful reading of the act will satisfy the Court at once that, in the judgment of the Territorial Legislature, there are no vacant or unoccupied lots in a town site after entry made and patent issued by the government; that all of the lands embraced in the patent are either actually or construc-

tively occupied. Citing Secs. 4, 5, 6, 7, 9, and 11 of the Townsite Act.

Section 11 of the Act, continuing in harmony with the preceding sections, provides that ''All persons who select and lay out a townsite and their assigns, shall be deemed occupants thereof and of the lots embraced therein within the meaning of the above mentioned Act of Congress and deeds shall be made accordingly.'' The objection to this section of the act is, that it is an attempt on the part of the Legislature to define and construe the word occupant as used in the Act of Congress, so as to embrace a class not contemplated by that act, and to that extent is in conflict with the paramount law and therefore void. It is not contended, however, that the rights conferred upon these constructive occupants under the act in any way conflict with the rights of individual claimants who occupied townsite lands at the time of the entry, but they assert that all lands not actually occupied at the date of the entry belong to the community to be disposed of, and the proceeds to be applied to public uses. Section 12 of the Act of the Legislature provides that, ''All moneys collected under the provisions of this act and not paid out for expenses, as herein provided, but remaining as surplus, shall be expended for the benefit of such town,'' etc. Moneys collected, here referred to, are such as would be received from the sale of lots, as provided in section 9, when the persons to whom they were allotted had failed to pay the tax assessed to them, but no provision is made in the act for the sale of VACANT lots, because, under the policy of the Territorial law, none existed. As the Act of Congress makes no provision for the disposal of vacant lands within a townsite, we fail to understand how a statute of the Territory, defining constructive occupancy of lands to which there is no other claimant, can be in conflict with the Act of Congress.

The idea of constructive occupancy has been in practice for years, and should not be abandoned as it prevents the success of the lawless element who would otherwise be jumping every attractive piece of land, made valuable by the labor of others and to which it had not contributed. The Territorial Legislature, having in view the preservation of

the peace and good order of the inhabitants of the new towns
springing up within its borders, enacted section 11 of the
Town Site Statute to enforce and effect the common usage
so generally prevailing in all the States and Territories of the
west and it only remains for the courts to enforce the law as
written in the statutes.

BARNES, J.—This was a suit to recover six lots in the city
of Tombstone, Cochise county. The case was tried by the
court without a jury. The case comes up on the findings of
the court below, and it is not necessary to look carefully into
the evidence. Errors were assigned upon the admission of
evidence, but, in the view we take of the case, it is not neces-
sary to consider them.

The findings are that on March 20, 1880, the corporate
authorities of the town of Tombstone, made application for
a patent for lands for a town-site, as is provided in section
2387, Rev. St. U. S. On September 20, 1880, a patent was
issued, which recites that the mayor and councilmen of the
town of Tombstone, in trust for the several use and benefit
of the inhabitants of the town, had purchased said prem-
ises; and the United States conveys and grants to Alder
Abner Randall, mayor as aforesaid, in trust as aforesaid,
and to his successors and assigns, in trust as aforesaid, sub-
ject to all the conditions contained in section 2387, *supra*;
that on November 8, 1880, said Alder Abner Randall, mayor
as aforesaid, duly executed a deed as such mayor, whereby
he, for a valuable consideration, granted and conveyed unto
James S. Clark, M. E. Clark, M. Gray, and John D. Rouse
a large number of lots and blocks, situated on said Tomb-
stone town-site, including the premises in controversy; that
plaintiffs are grantees from the above grantees; that on the
eight day of November, A. D., 1880, more than three-fourths
of the lots within the town-site of Tombstone were wholly
vacant, unoccupied and unimproved, and a number of the
remaining lots had been improved by, and were in the actual
occupation of, parties other than the grantees in said deed
from Randall, mayor; that when defendant entered upon
said lots sued for, the same were wholly vacant, unoccupied
and unimproved, and that neither plaintiffs, nor any one

through whom they claim, had been in the actual occupation thereof; that as a matter of law, plaintiffs acquired the legal title to said premises by said deed of Randall, mayor, and had the right of possession; and that defendant never had any right in said premises.

The rights of the plaintiffs and this whole case hang on the validity of the deed from Randall, mayor. The deed is an indenture between the common council, the corporate authorities. of the town of Tombstone, the parties of the first part, and J. S. Clark, M. E. Clark, M. Gray, and J. D. Rouse parties of the second part, and recites that Alder Randall was mayor, and Gray and others councilmen, when said deed was made; and that said grantees had claimed the lots thereinafter conveyed, and that they were the owners and occupants thereof; and in consideration of the premises, and of $5.80, granted, bargained and sold to the parties of the second part 2,168 lots out of the total 2,394, composing the whole town-site, to have and to hold the same, J. S. Clark, an undivided one fifth; M. E. Clark, two-fifths; J. D. Rouse, one-fifth; and M. Gray, one-fifth. Signed "ALDER RANDALL, MAYOR," etc.

The act of congress (Rev. St. U. S. § 2387) provides that the "corporate authorities" may enter at the proper land-office land settled and occupied, in trust for the several use and benefit of the occupants thereof; the execution of which trust as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as the state or territory may by law provide. The deed by Randall, on its face, was a violation of the trust imposed upon him by law. Out of 2,394 lots he deeded 2,168 to four persons, not in severalty as occupants, but to them as tenants in common. The findings of the court show that at the time said deed was made three-fourths of the lots were vacant, including the lot sued for. The mayor held the title to these lots in trust for the occupants. He had no power to convey the title to anyone but to occupants. The legislature of the territory had the power to regulate the manner of disposal of the lots and the execution of the trust. But there was no power to change or alter the conditions of the trust. The very object and purpose of the law was to prevent any pri-

vate person or corporation from getting title to the lots included in such a town-site, and holding the same for purposes of speculation. If any profit was to accrue from the sale of such lots, it was carefully guarded for the benefit of the inhabitants of the town. Here was a bold attempt to transfer substantially this whole town-site to four persons which would enable them to speculate off of the present and future inhabitants of the town. It was a legal and actual fraud which ought not to be countenanced for a moment. The deed conveyed to parties no other title than Randall had, and so the title remained in whoever held the legal title in trust for the "several use and benefit of the occupants" of the said town.

Any act of the legislature which would create a breach of such trust is void. This same question was before the supreme court of Kansas in the cases of *Winfield Town Co. v. Maris* 11 Kan. 128, and *Independence Town Co.* v. *De Long,* 11 Kan. 153. In that state there existed the same statute as our section 11, *c.* 80, Comp. Laws, viz: "All persons who select and lay out a town-site, and their assigns, shall be deemed occupants thereof, and the lots embraced therein, within the meaning of the above-mentioned act of congress, and deeds shall be made accordingly." That court holds that, so far as that section gives a town company or persons who select and lay out a town-site any advantage over any other occupant, it is inoperative. "The legislature, in prescribing the rules for the execution of the trust, cannot change it by substituting other parties to receive its benefits than those indicated in the law of congress." If individuals or town companies choose to lay out lands for town-site, and make money by that means, there is no law to prevent it; but they cannot pre-empt the public domain for that purpose under the law of congress. That law was made for the benefit of the occupants of the town, and not for speculators. The law of congress has received a construction similar to that which we have given it, in the case of *Cash* v. *Spalding,* 6 Mich. 193; and while the court was divided on one of the questions raised, yet on this point both the opinion of the court and the dissenting opinion agree. Reference is made to *Leech* v. *Ranch,* 3 Minn. 448, (Gil. 332,) and *Castner* v. *Gunther,* 6 Minn.

135, (Gil. 63,) as making a different ruling; but the decisions do not sustain the opinion claimed for them. In the last-cited case the learned judge who delivered the opinion of the court states that he holds with the decision in Michigan, but that point was not before the court.

The judgment of the court below is reversed.